UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
**JOSEPH FIERRO,**

                        Plaintiff,

        -against-

**THE CITY OF NEW YORK, RONNA BLEADON,**
former Principal, P12X, Special Education District 75, New
York City Department of Education, in her individual
and official capacities, **SHARON BURNETT,** former
Local Instructional Superintendent within Special
Education District 75, New York City Department of
Education, in her individual and official capacities, **DR.
SUSAN ERBER,** former Superintendent, Special
Education District 75, Citywide Programs, New York
City Department of Education, in her individual and
official capacities, and **BONNIE BROWN,** former
Deputy Superintendent (and current Superintendent),
Special Education District 75, Citywide Programs, New
York City Department of Education, in her individual
and official capacities,

                        Defendants.

----------------- ------------------------------------------------------x
_____

Docket #: 07-CV-11214
              (SAS)

**<u>AMENDED COMPLAINT</u>**

**<u>JURY TRIAL
DEMANDED</u>**

      Plaintiff JOSEPH FIERRO, by his attorneys, Ofodile & Associates, P.C., complaining of

Defendants CITY OF NEW YORK, and RONNA BLEADON (Principal, P12X, Special

Education District 75, New York City Department of Education), SHARON BURNETT (former

Local Instructional Superintendent within Special Education District 75, New York City

Department of Education), DR. SUSAN ERBER (former Superintendent, Special Education

District 75, Citywide Programs, New York City Department of Education), and BONNIE

BROWN [former Deputy Superintendent (and current Superintendent), Special Education

District 75, Citywide Programs, New York City Department of Education] acting in their

individual and official capacities, upon information and belief, alleges as follows:

## NATURE OF ACTION

1.     This is an action at law pursuant to the New York State Executive Law, Article 15, Section 296 (Human Rights Law) and the New York City Administrative Code § 8, et seq. to redress discrimination in employment on the basis of sex and sexual harassment in the workplace.  This is also an action pursuant to the aforementioned laws to redress *quid pro quo* harassment/retaliation for resisting sexual advances and retaliation for complaining about sexual harassment.

2.     Furthermore, this is an action at law pursuant to 42 U.S.C. § 1983 to redress retaliatory actions perpetrated by Defendants, who are State actors, against Plaintiff for Plaintiff's exercising his rights under the First Amendment to the U.S. Constitution, which applies to the States through the Fourteenth Amendment.

3.     Plaintiff seeks injunctive and declaratory relief, other equitable relief, compensatory damages, punitive damages, and attorneys' fees and costs and disbursements pursuant to the New York State Human Rights Law, the New York City Administrative Code, and 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

4.     Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28 U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

2

5.    The events, parties, transactions and injuries that form the basis of Plaintiff's federal claims are identical to the events, parties, transactions and injuries that form the basis of Plaintiff's claims brought under the New York State Executive Law § 296 (Human Rights Law) and the New York City Administrative Code.  Therefore, this Court has supplemental jurisdiction over the claims brought under the New York State Executive Law § 296 and the New York City Administrative Code.

6.    Venue is proper because the events complained of herein occurred in the Bronx, New York (County of Bronx), which is within the Southern District of New York.

## PARTIES

7.    During all times relevant and material to this case, Plaintiff Joseph Fierro resided in the State of New York within the jurisdiction of this Court.  At all times relevant and material to this case, Plaintiff Joseph Fierro was employed by Defendant City of New York as an Assistant Principal for P12X which encompassed approximately six school sites and was part of Special Education District 75 of the New York City Department of Education.  During all times relevant and material to this case, Plaintiff Joseph Fierro, was supervised by, and reported to, Defendant Ronna Bleadon, who was the Principal of P12X.

8.    During all times relevant and material to this case, Defendant City of New York was a municipal corporation incorporated under the laws of the State of New York, and an employer within the meaning of the New York State Human Rights Law and the New York City Administrative Code.

9.    During all times relevant and material to this case, Defendant Ronna Bleadon was employed by Defendant City of New York as the Principal for P12X, which encompassed

approximately six school sites and was part of Special Education District 75 of the New York

City Department of Education.  During all times relevant and material to this case, Defendant

Ronna Bleadon was Plaintiff Joseph Fierro's supervisor.

10.    During all times relevant and material to this case, Defendant Sharon Burnett was

employed by Defendant City of New York as a Local Instructional Superintendent within Special

Education District 75, New York City Department of Education.

11.    During all times relevant and material to this case, Defendant Dr. Susan Erber was

employed by Defendant City of New York as the Superintendent of Special Education District

75, Citywide Programs, New York City Department of Education.

12.    During all times relevant and material to this case, Defendant Bonnie Brown was

employed by Defendant City of New York as the Deputy Superintendent of Special Education

District 75, Citywide Programs, New York City Department of Education.

13.    During all times relevant and material to this case, Defendant City of New York

was responsible for the actions of Defendants Ronna Bleadon, Sharon Burnett, Dr. Susan Erber,

and Bonnie Brown under the common law principal agent / *respondeat superior* rule.

## FULFILLMENT OF ADMINISTRATIVE PREREQUISITES

14.    Before the institution of this action, Plaintiff served a copy of the Complaint on

the New York City Corporation Counsel's Office as well as on the New York City Commission

on Human Rights on or about November 21, 2007 in accordance with the requirements of the

Administrative Code of the City of New York § 8-502 (c).

15.    Furthermore, the New York State Division of Human Rights administratively

dismissed the complaint filed before it and vitiated the election of remedies for administrative

4

convenience giving Plaintiff the right to file this action in this Court.

## FACTUAL ALLEGATIONS

16.     Plaintiff began working as an Assistant Principal for P12X in 2002.  P12X is comprised of approximately six school sites in the South Bronx.  It is part of Special Education District 75 of the New York City Department of Education.  The administration of P12X of which Plaintiff was a part was based at Lewis and Clark High School (2555 Tratman Avenue, Bronx, NY 10461), which was one of the approximately six school sites that made up P12X.  That was where Defendant Ronna Bleadon, Plaintiff, and the other Assistant Principals of P12X had their offices.  Plaintiff worked as an Assistant Principal for P12X, reporting to and under the supervision of Defendant Ronna Bleadon, until he was abruptly transferred in the Fall of 2005  to one of the top 25 most dangerous schools in New York State in retaliation for complaining about Defendant Bleadon's sexual harassment of him and her retaliation against him.

17.     Defendant Ronna Bleadon's sexual harassment of Plaintiff developed gradually. When Plaintiff began his employment at P12X and met Defendant Bleadon for the first time in 2002, he was dressed in a suit (as he was almost always dressed at work) and Defendant Bleadon commented that he was such a handsome guy in a suit.  During one-on-one business meetings that Plaintiff had with his supervisor Defendant Bleadon in her office over the next couple of years, Defendant Bleadon repeatedly brought up, and spoke in detail, to Plaintiff about her personal life.  She repeatedly told Plaintiff that her ex-husband had beaten her, degraded/demoralized her, and cheated on her, that she still talked to her ex-husband, that he was a principal at another school, and that she was afraid that he was spreading rumors about her. She also told Plaintiff many times that her current husband traveled often to Europe and other

parts of the world and that he was jealous of Plaintiff because she was always telling her husband how wonderful Plaintiff was and what a good job he was doing. Plaintiff felt very uncomfortable with these statements and would respond that there was no reason for her husband to be jealous, as she was Plaintiff's principal and he was Plaintiff's assistant principal and they only worked together.

18.    During the first two years, Defendant Ronna Bleadon also made inappropriate comments about Plaintiff's physical appearance, and thereby caused Plaintiff to feel embarrassed, humiliated, and self-conscious. In the summer, Plaintiff wore shorts to work, after having obtained permission to do so because the school was not air conditioned, and Defendant Bleadon often told Plaintiff, including in front of staff members and administrators from District 75, that he had great legs, that his legs were looking fantastic, and asking him if he had been working out.

19.    In or about the fall of 2004, Defendant Bleadon repeatedly suggested to Plaintiff to come over to her house while her husband was away for the weekend traveling for business and "keep her company." She made these statements/suggestions in person to Plaintiff while they were at work, as well as phoned Plaintiff after she left work and made them. Plaintiff was very uncomfortable with her suggestions and in an attempt to dispel the awkwardness of the situation, he would respond by saying that he had a jealous girlfriend and that she would not like if he went over to Defendant's home.

20.    On one occasion, Defendant Bleadon also asked Plaintiff, "Is it true what they say about Italians?" Plaintiff responded, "What do you mean?" Defendant Bleadon said, "You know." Plaintiff facetiously asked, "What, that we're smart?" Defendant Bleadon said no and repeated "You know."

21.     Furthermore, starting in the fall of 2004, Defendant Bleadon would beckon Plaintiff to her office by saying "Come see mommy" or "Come to Mama Bleadon" in front of other Assistant Principals.

22.     In addition to resisting Defendant Bleadon's sexual advances, Plaintiff also exercised his First Amendment speech in or about the fall of 2004 by refusing to participate in or facilitate Defendant Bleadon's campaigns to ruin the careers of two very good teachers whom Bleadon did not like.  Participating in Defendant Bleadon's efforts to black-ball these two teachers was not part of Plaintiff's job description or job duties and therefore, he was exercising his First Amendment freedoms as a citizen when he refused to participate.  One of the two teachers whom Defendant Bleadon targeted was Ms. Grey.  Ms. Grey had broken up a fight between two female students, and Defendant Ronna Bleadon told Plaintiff, who witnessed Ms. Grey breaking up the fight, to lie and say that Ms. Grey had held the head of one of the girls and told the other girl to punch her.  Plaintiff told Defendant Bleadon not to turn to him for things like that and that he was not going to lie and destroy this teacher's career.

23.     The other teacher for whom Defendant Bleadon tried to enlist Plaintiff's help in targeting was a shop teacher named Mr. Simon.  Defendant Bleadon instructed Plaintiff to go into Mr. Simon's classroom and find things for which the administration could give Mr. Simon a "U" (Unsatisfactory) rating.  Plaintiff observed Mr. Simon's classroom and did not find anything that warranted a "U" rating.  He told Bleadon same.

24.     Defendant Bleadon retaliated against Plaintiff for resisting her sexual advances and/or exercising his First Amendment freedoms.  Her retaliatory actions included but were not limited to:  (1) using profane language towards Plaintiff in front of staff and students and making

7

abusive and derogatory remarks to him; (2) taking away vacation days from him; (3) directing

him to do manual labor and other tasks outside of his job description; (4) making derogatory

remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and

commenting to Plaintiff that Plaintiff was associated with the Mafia; (5) taunting Plaintiff over

his learning disabilities including but not limited to by referring to him as "brain dead" and

asking him if going to the fourth floor to get someone was "too much for [him] to handle with his

disability"; (6) harshly criticizing and ostracizing Plaintiff whereas she used to shower him with

praise and tell him that he was going to be principal one day; (7) questioning Plaintiff's sexuality

and speaking to staff members about whether Plaintiff was gay, which Plaintiff is not (which was

not only a retaliatory action but sexual harassment in and of itself); (8) threatening Plaintiff that

she would transfer him to West Side High School (which was a site of P12X that was in many

ways less desirable than Lewis & Clark) and he wouldn't have all the comforts that he had at

Lewis and Clark; (9) actually transferring him to West Side High School; and (10) falsifying

latenesses on Plaintiff's attendance record and then charging him with these false latenesses in

his 2005 annual evaluation.

        25.     Defendant Bleadon followed through on her threat and transferred Plaintiff

against his will to West Side High School in the middle of the Spring semester of 2005.  After

Plaintiff was transferred to West Side, he no longer had his own office, parking spot, computer,

or phone, and the atmosphere was much less clean, modern, and maintained than Lewis and

Clark.  Furthermore, West Side was further from Plaintiff's home than Lewis and Clark and he

among the damages that he claims in this case is the extra money that he had to spend on gas for

his car to travel the extra distance.  In addition, by transferring Plaintiff to West Side, Defendant

Bleadon separated Plaintiff from the other Assistant Principals of P12X, who were still at Lewis and Clark.

26.     Defendant Bleadon repeatedly called Plaintiff at West Side to taunt him on the transfer.  She would ask how he likes it there at West Side and state, "Not the same comforts that you had here."  Plaintiff would say to her that he missed his office and he didn't understand why he no longer had his own office, and she would respond, "Well you think about it."  In addition, because Bleadon was still Plaintiff's supervisor, he would have to return to Lewis and Clark for one-on-one meetings with her.  As they started these meetings, she would tell him to close the door and ask, "So, do you miss me?" or "So, you ready to behave?"

27.     In or about August 2005, Plaintiff complained to the Defendant Sharon Burnett – who was then a Local Instructional Superintendent in District 75 supervising P12X among other schools – that Defendant Ronna Bleadon had sexually harassed him and was retaliating against him for rebuffing her advances.  Upon Plaintiff's information and belief, Defendant Burnett spoke to Defendants Bonnie Brown and Dr. Susan Erber, who at the time were the Deputy Superintendent and Superintendent of District 75, respectively, about Plaintiff's complaints.  In retaliation for Plaintiff's complaints about Defendant Bleadon, Defendant Burnett got back in contact with Plaintiff and told him that it had been decided that he would be transferred to P753K, which was a District 75 high school in Brooklyn that had been named by New York State as one of the top 25 most dangerous schools in the State.  Plaintiff told Burnett that he didn't want to go to P753K and that he wanted the issue with Bleadon resolved.  Plaintiff explained to Burnett that P753K was one of the most dangerous schools in the State and that he had already placed his life at risk at another dangerous school earlier in his career where he had had to

wrestle handguns to the ground and had been stabbed twice. Defendant Burnett told Plaintiff that he had to go to P753K. Thereby, Plaintiff was transferred against his will to P753K, in retaliation for complaining about Defendant Bleadon's sexual harassment of him and about her retaliation against him. Plaintiff, who had already served as Assistant Principal at P12X for three years, would have received tenure at P12X after another two years and Defendants' abrupt transfer of him to another school threw a wrench into his progress toward tenure, and Plaintiff claims as specific damages raises and benefits associated with receiving tenure.

28.     Plaintiff suffered great emotional, mental, and physical distress as a result of Defendants' unlawful actions. He received medical treatment for his distress and was prescribed medication. Among the specific damages that he claims in this case are the insurance co-pays that he had to pay for the medical visits and medication. In addition, Defendants' actions toward Plaintiff were a major cause of his having to take a medical leave of absence in the Spring of 2006. He was not paid for approximately 20 days (4 weeks) of this leave of absence, and claims these lost wages as specific damages in this case.

29.     Furthermore, Plaintiff had planned to undergo training in early 2005 to work one-on-one with autistic children after school, on weekends, and during the summer. Because there was a shortage of such workers, Plaintiff would have obtained employment almost immediately after the training. However, the distress that he suffered from the sexual harassment and the retaliation prevented him from pursuing the training in early 2005. He was not able to do the training until the summer of 2006 and the distress from Defendants' actions has been a major contributing factor for him still not being able to start performing the work for which he was trained. Therefore, Plaintiff claims as specific damages the wages that he would have earned in

10

such a position had he not been prevented him from doing the training and starting to work in early 2005.

## FOR A FIRST CAUSE OF ACTION

30.     Plaintiff repeats and realleges paragraphs 1 through 29 as if each paragraph is repeated verbatim herein.

31.     In violation of the New York State Executive Law § 296, et seq, Defendants The City of New York and Ronna Bleadon discriminated against Plaintiff on the basis of his male sex in the terms, conditions, and privileges of his employment by sexually harassing him and subjecting him to a sexually hostile work environment.

## AND AS FOR A SECOND CAUSE OF ACTION

32.     Plaintiff repeats and realleges paragraphs 1 through 31 as if each paragraph is repeated verbatim herein.

33.     In violation of the New York City Administrative Code § 8, et seq, Defendants The City of New York and Ronna Bleadon discriminated against Plaintiff on the basis of his male sex in the terms, conditions, and privileges of his employment by sexually harassing him and subjecting him to a sexually hostile work environment.

## AND AS FOR A THIRD CAUSE OF ACTION

34.     Plaintiff repeats and realleges paragraphs 1 through 33 as if each paragraph is repeated verbatim herein.

35.     In violation of the New York State Executive Law § 296, et seq, Defendants The City of New York and Ronna Bleadon retaliated against Plaintiff for rebuffing Defendant Bleadon's sexual advances by subjecting him to a retaliatory hostile work environment, including

11

but not limited to:  using profane language towards Plaintiff in front of staff and students and

making abusive and derogatory remarks to him; taking away vacation days from him; directing

him to do manual labor and other tasks outside of his job description; making derogatory remarks

about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to

Plaintiff that Plaintiff was associated with the Mafia; taunting Plaintiff over his learning

disabilities including but not limited to by referring to him as "brain dead" and asking him if

going to the fourth floor to get someone was "too much for [him] to handle with his disability";

harshly criticizing and ostracizing Plaintiff whereas she used to shower him with praise and tell

him that he was going to be principal one day; questioning Plaintiff's sexuality and speaking to

staff members about whether Plaintiff was gay, which Plaintiff is not (which was not only a

retaliatory action but sexual harassment in and of itself); threatening Plaintiff that she would

transfer him to West Side (which was a site that was in many ways less desirable than Lewis &

Clark) and telling him he wouldn't have all the comforts that he had at Lewis and Clark; actually

transferring Plaintiff to West Side; and falsifying latenesses on Plaintiff's attendance record and

then charging him with these false latenesses in his 2005 annual evaluation.

## AND AS FOR A FOURTH CAUSE OF ACTION

36.     Plaintiff repeats and realleges paragraphs 1 through 35 as if each paragraph is

repeated verbatim herein.

37.     In violation of the New York City Administrative Code § 8, et seq., Defendants

The City of New York and Ronna Bleadon retaliated against Plaintiff for rebuffing Defendant

Bleadon's sexual advances by subjecting him to a hostile work environment, including but not

limited to:  using profane language towards Plaintiff in front of staff and students and making

abusive and derogatory remarks to him; taking away vacation days from him; directing him to do manual labor and other tasks outside of his job description; making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; taunting Plaintiff over his learning disabilities including but not limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get someone was "too much for [him] to handle with his disability"; harshly criticizing and ostracizing Plaintiff whereas she used to shower him with praise and tell him that he was going to be principal one day; questioning Plaintiff's sexuality and speaking to staff members about whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself); threatening Plaintiff that she would transfer him to West Side (which was a site that was in many ways less desirable than Lewis & Clark) and telling him he wouldn't have all the comforts that he had at Lewis and Clark; actually transferring Plaintiff to West Side; and falsifying latenesses on Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.

## AND AS FOR A FIFTH CAUSE OF ACTION

38.     Plaintiff repeats and realleges paragraphs 1 through 37 as if each paragraph is repeated verbatim herein.

39.     In violation of the New York State Executive Law § 296, et seq, Defendants The City of New York and Ronna Bleadon retaliated against Plaintiff with the tangible action of transferring him to West Side, which was further from his home and much less clean, modern, and maintained than Lewis & Clark and where among other things he was not provided with his own parking spot, computer, or phone and he was separated from the other Assistant Principals.

13

## AND AS FOR A SIXTH CAUSE OF ACTION

40.     Plaintiff repeats and realleges paragraphs 1 through 39 as if each paragraph is repeated verbatim herein.

41.     In violation of the New York City Administrative Code § 8, et seq., Defendants The City of New York and Ronna Bleadon retaliated against Plaintiff with the tangible action of transferring him to West Side, which was further from his home and much less clean, modern, and maintained than Lewis & Clark and where among other things he was not provided with his own parking spot, computer, or phone and he was separated from the other Assistant Principals.

## AND AS FOR A SEVENTH CAUSE OF ACTION

42.     Plaintiff repeats and realleges paragraphs 1 through 41 as if each paragraph is repeated verbatim herein.

43.     In violation of the New York State Executive Law § 296, et seq, Defendants The City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown retaliated against Plaintiff for complaining about Defendant Ronna Bleadon's sexual harassment of him and retaliation against him by transferring him, against his will from P12X to P753K, which was one of the top 25 most dangerous schools in New York State.  The abrupt transfer threw a wrench into Plaintiff's progress toward tenure.

## AND AS FOR AN EIGHTH CAUSE OF ACTION

44.     Plaintiff repeats and realleges paragraphs 1 through 43 as if each paragraph is repeated verbatim herein.

45.     In violation of the New York City Administrative Code § 8, et seq., Defendants

The City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown retaliated against Plaintiff for complaining about Defendant Ronna Bleadon's sexual harassment of him and retaliation against him by transferring him, against his will from P12X to P753K, which was one of the top 25 most dangerous schools in New York State. The abrupt transfer threw a wrench into Plaintiff's progress toward tenure.

### AND AS FOR A NINTH CAUSE OF ACTION

46.     Plaintiff realleges and repeats paragraphs 1 through 45 as if each paragraph is recited and repeated verbatim herein.

47.     While acting under color of State Law, Defendant Ronna Bleadon violated Plaintiff's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to Defendant Bleadon's efforts to reprimand and falsely implicate two innocent teachers. Defendant Bleadon retaliated against Plaintiff by subjecting him to a retaliatory hostile work environment, including but not limited to: using profane language towards Plaintiff in front of staff and students and making abusive and derogatory remarks to him; taking away vacation days from him; directing him to do manual labor and other tasks outside of his job description; making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; taunting Plaintiff over his learning disabilities including but not limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get someone was "too much for [him] to handle with his disability"; harshly criticizing and ostracizing Plaintiff whereas she used to shower him with praise and tell him that he was going to be principal one day; questioning Plaintiff's sexuality and speaking to staff members about

15

whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself); threatening Plaintiff that she would transfer him to West Side (which was a site that was in many ways less desirable than Lewis & Clark) and telling him he wouldn't have all the comforts that he had at Lewis and Clark; actually transferring Plaintiff to West Side; and falsifying latenesses on Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.

48.    By violating Plaintiff's First Amendment rights under color of State Law, Defendant Ronna Bleadon violated 42 U.S.C. § 1983.

## AND AS FOR A TENTH CAUSE OF ACTION

49.    Plaintiff repeats and realleges paragraphs 1 through 48 as if each paragraph is repeated verbatim herein.

50.    While acting under color of State Law, Defendant Ronna Bleadon violated Plaintiff's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to Defendant Bleadon's efforts to reprimand and falsely implicate two innocent teachers.  Defendant Ronna Bleadon retaliated against Plaintiff with the tangible action of transferring him to West Side, which was further from his home and much less clean, modern, and maintained than Lewis & Clark and where among other things he was not provided with his own parking spot, computer, or phone and he was separated from the other Assistant Principals.

51.    By violating Plaintiff's First Amendment rights under color of State Law, Defendant Ronna Bleadon violated 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiff prays for judgment as follows:

16

**Under the New York State Executive Law, Article 15, Section 296 (Human Rights Law) for each of the First, Third, and Fifth Causes of Action:**

i.   declaring the acts and conduct complained of herein in violation of the New York State Executive Law, Article 15, Section 296 (Human Rights Law);

ii.  enjoining and permanently restraining these violations and directing Defendants City of New York and Ronna Bleadon to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii. enjoining Defendants City of New York and Ronna Bleadon from committing or allowing any further harassment of Plaintiff or retaliation against Plaintiff;

iv.  ordering Defendants City of New York and Ronna Bleadon, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, mental anguish, and physical distress suffered by Plaintiff;

v.   awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring 2006 – against Defendants City of New York and Ronna Bleadon, jointly and severally;

vi.  awarding Plaintiff specific damages for the wages that he lost from early 2005 to present because the distress that he suffered as a result of Defendants' actions prevented him from pursuing training and then

17

employment to work one-on-one with autistic children – against
Defendants City of New York and Ronna Bleadon, jointly and severally;

vii.    awarding Plaintiff specific damages for the insurance co-pays that he paid
for medical treatment and medication that he received for the physical,
emotional, and mental distress that he suffered as a result of Defendants'
actions – against Defendants City of New York and Ronna Bleadon,
jointly and severally;

viii.    awarding Plaintiff specific damages for the extra money that he spent on
gas having to travel to and from West Side High School – against
Defendants City of New York and Ronna Bleadon, jointly and severally;

ix.    awarding Plaintiff the reasonable costs and disbursements of this action –
against Defendants City of New York and Ronna Bleadon, jointly and
severally; and

x.    granting any other and further relief to the Plaintiff as the Court deems
necessary, just, and proper.

**Under the New York City Administrative Code § 8, et seq. for each of the Second,
Fourth, and Sixth Causes of Action:**

i.    declaring the acts and conduct complained of herein in violation of the
New York City Administrative Code § 8, et seq.;

ii.    enjoining and permanently restraining these violations and directing
Defendants City of New York and Ronna Bleadon to take such affirmative
action as is necessary to ensure that the effects of these unlawful

18

employment practices are eliminated;

iii.    enjoining Defendants City of New York and Ronna Bleadon from committing or allowing any further harassment of Plaintiff or retaliation against Plaintiff;

iv.    ordering Defendants City of New York and Ronna Bleadon, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, mental anguish, and physical distress suffered by Plaintiff;

v.    awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring 2006 – against Defendants City of New York and Ronna Bleadon, jointly and severally;

vi.    awarding Plaintiff specific damages for the wages that he lost from early 2005 to present because the distress that he suffered as a result of Defendants' actions prevented him from pursuing training and then employment to work one-on-one with autistic children – against Defendants City of New York and Ronna Bleadon, jointly and severally;

vii.    awarding Plaintiff specific damages for the insurance co-pays that he paid for medical treatment and medication that he received for the physical, emotional, and mental distress that he suffered as a result of Defendants' actions – against Defendants City of New York and Ronna Bleadon, jointly and severally;

viii.    awarding Plaintiff specific damages for the extra money that he spent on

19

gas having to travel to and from West Side High School – against

Defendants City of New York and Ronna Bleadon, jointly and severally;

ix.    ordering Defendant Ronna Bleadon to pay Plaintiff punitive damages in an

amount to be determined at trial;

x.    awarding Plaintiff attorneys' fees and the reasonable costs and

disbursements of this action – against Defendants City of New York and

Ronna Bleadon, jointly and severally; and

xi.    granting any other and further relief to the Plaintiff as the Court deems

necessary, just, and proper.

**Under the New York State Executive Law, Article 15, Section 296 (Human Rights**

**Law) for the Seventh Cause of Action:**

i.    declaring the acts and conduct complained of herein in violation of the

New York State Executive Law, Article 15, Section 296 (Human Rights

Law);

ii.    enjoining and permanently restraining these violations and directing

Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and

Bonnie Brown to take such affirmative action as is necessary to ensure that

the effects of these unlawful employment practices are eliminated;

iii.    enjoining Defendants City of New York, Sharon Burnett, Dr. Susan Erber,

and Bonnie Brown from committing or allowing any further harassment of

Plaintiff or retaliation against Plaintiff;

iv.    ordering Defendants City of New York, Sharon Burnett, Dr. Susan Erber,

20

and Bonnie Brown, jointly and severally, to pay Plaintiff general and

compensatory damages in an amount to be determined at trial for pain and

suffering, humiliation, emotional distress, mental anguish, and physical

distress suffered by Plaintiff;

v.    ordering Defendants to reinstate Plaintiff to his position as Assistant

Principal of P12K and to grant him the tenure he would have

received had he not been transferred to P753K;

vi.    awarding Plaintiff the raises and benefits associated with tenure that he

would have received had he been allowed to obtain tenure at P12X–

against Defendants City of New York, Sharon Burnett, Dr. Susan Erber,

and Bonnie Brown, jointly and severally;

vii.    awarding Plaintiff specific damages for the wages that he lost while taking

a medical leave of absence in the Spring 2006 – against Defendants City

of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly

and severally;

viii.    awarding Plaintiff specific damages for the wages that he lost from the

Summer of 2005 to present because the distress that he suffered as a result

of Defendants' actions prevented him from pursuing training and then

employment to work one-on-one with autistic children – against

Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and

Bonnie Brown, jointly and severally;

ix.    awarding Plaintiff specific damages for the insurance co-pays that he paid

for medical treatment and medication that he received for the physical, emotional, and mental distress that he suffered as a result of Defendants' actions – against Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

x.       awarding Plaintiff the reasonable costs and disbursements of this action – against Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally; and

xi.     granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under the New York City Administrative Code § 8, et seq. for the Eighth Cause of Action:**

i.        declaring the acts and conduct complained of herein in violation of the New York City Administrative Code § 8, et seq.;

ii.       enjoining and permanently restraining these violations and directing Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii.     enjoining Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown from committing or allowing any harassment of Plaintiff or retaliation against Plaintiff;

iv.     ordering Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally, to pay Plaintiff general and

22

compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, mental anguish, and physical distress suffered by Plaintiff;

v.    ordering Defendants to reinstate Plaintiff to his position as Assistant Principal of P12K and to grant him the tenure he would have received had he not been transferred to P753K;

vi.    awarding Plaintiff the raises and benefits associated with tenure that he would have received had he been allowed to obtain tenure at P12X– against Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

vii.    awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring 2006 – against Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

viii.    awarding Plaintiff specific damages for the wages that he lost from the Summer of 2005 to present because the distress that he suffered as a result of Defendants' actions prevented him from pursuing training and then employment to work one-on-one with autistic children – against Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

ix.    awarding Plaintiff specific damages for the insurance co-pays that he paid for medical treatment and medication that he received for the physical,

emotional, and mental distress that he suffered as a result of Defendants' actions – against Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

x.    ordering Defendants Sharon Burnett, Dr. Susan Erber, and Bonnie Brown to pay Plaintiff punitive damages in an amount to be determined at trial;

xi.   awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action – against Defendants City of New York, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally; and

xii.  granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under 42 U.S.C. § 1983 and the First Amendment for each of the Ninth and Tenth Causes of Action against Defendant Ronna Bleadon:**

i.    declaring the acts and conduct complained of herein in violation of Plaintiff's rights under the First Amendment to the United States Constitution and 42 U.S.C. § 1983;

ii.   enjoining and permanently restraining these violations and directing Defendant Ronna Bleadon to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii.  enjoining Defendant Ronna Bleadon from committing or allowing any further harassment of Plaintiff or retaliation against Plaintiff;

iv.    ordering Defendant Ronna Bleadon to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, and mental anguish suffered by Plaintiff;

v.    awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring 2006;

vi.    awarding Plaintiff specific damages for the wages that he lost from early 2005 to present because the distress that he suffered as a result of Defendant's actions prevented him from pursuing training and then employment to work one-on-one with autistic children;

vii.    awarding Plaintiff specific damages for the insurance co-pays that he paid for medical treatment and medication that he received for the physical, emotional, and mental distress that he suffered as a result of Defendant's actions;

viii.    awarding Plaintiff specific damages for the extra money that he spent on gas having to travel to and from West Side High School;

ix.    ordering Defendant Ronna Bleadon to pay Plaintiff punitive damages in an amount to be determined at trial;

x.    awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action; and

xi.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

Dated:  Brooklyn, New York
       March 6, 2008

                                         OFODILE & ASSOCIATES, P.C.
                                         Attorneys for Plaintiff Joseph Fierro

                                     By: _____
_____         Anthony C. Ofodile, Esq. (AO-8295)
                                     498 Atlantic Avenue
                                     Brooklyn, New York 11217
                                     Tel. No.:  (718) 852-8300

26