UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x        Docket #: 07-CV-11214

**JOSEPH FIERRO,**                                                                                (SAS)

                          Plaintiff,

          -against-

**THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF EDUCATION, RONNA
BLEADON,** former Principal, P12X, Special Education
District 75, New York City Department of Education, in
her individual and official capacities, **SHARON
BURNETT,** former Local Instructional Superintendent
within Special Education District 75, New York City
Department of Education, in her individual and official
capacities, **DR. SUSAN ERBER,** former Superintendent,
Special Education District 75, Citywide Programs, New
York City Department of Education, in her individual
and official capacities, and **BONNIE BROWN,** former
Deputy Superintendent (and current Superintendent),
Special Education District 75, Citywide Programs, New
York City Department of Education, in her individual and
official capacities,

                          Defendants.

----------------- --------------------------------------------------------x

### AFFIRMATION OF ANTHONY C. OFODILE, ESQ. IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO AMEND THE COMPLAINT

          Anthony C. Ofodile, Esq., affirms under penalty of law as follows:

          1.          I am an attorney duly admitted to practice in the State of New York and in

this Court and the Attorney of Record for Plaintiff Joseph Fierro in this case and as such I

am fully familiar with the facts of this case and the proceedings thus far.

          2.          Annexed hereto as Exhibit 1 is the Second Amended Complaint.

          3.          Annexed hereto as Exhibit 2 is the Affidavit of Plaintiff Joseph Fierro.

          4.          Annexed hereto as Exhibit 3 is Plaintiff's Proposed Third Amended

Complaint.

5.     Annexed hereto as Exhibit 4 is a copy of Plaintiff's complaint with the New York State Division of Human Rights.

6.      Annexed hereto as Exhibit 5 is a computer printout of my letter to the New York State Division of Human Rights, asking them to administratively dismiss Plaintiff's complaint.

7.     Annexed hereto as Exhibit 6 is my Associate's letter to the EEOC, dated March 12, 2008.

8.     Annexed hereto as Exhibit 7 is the postmarked envelope from the EEO and the "Right to Sue" letter.

9.      One of the ways in which Plaintiff wishes to amend the Complaint is to add discrimination and retaliation causes of action under Title VII, 42 U.S.C. § 2000e, et seq.  Although the U.S. Equal Employment Opportunity Commission purports to have issued a "Right to Sue" letter on September 17, 2007, my office did not receive this letter until after March 19, 2008 and Plaintiff has informed me that he never received the letter. Plaintiff is the type of client who calls my office everytime anything happens in his life that is related to the case, so I know that he would have told me if he had received the "Right to Sue" letter.

10.     Prior to retaining my office as his counsel in or about July 2007, Plaintiff filed a complaint with the New York State Division of Human Rights, regarding, among other things, Defendants' sexual harassment of him, retaliation against him for rebuffing sexual advances, and retaliation against him for complaining about sexual harassment.

Upon my information and belief, when Plaintiff filed this complaint with the New York State Division of Human Rights, it was dually filed with the U.S. Equal Employment Opportunity Commission (EEOC) and assigned Federal Charge No.: 16GA601893. *See* Exhibit 4 annexed hereto.

11.    After Plaintiff retained my office in or about July 2007, I, with Plaintiff's consent, wrote a letter to the New York State Division of Human Rights in or about August 2007 asking them to administratively dismiss Plaintiff's complaint. *See* Exhibit 5, annexed hereto. I did not write to the U.S. Equal Employment Opportunity Commission at that time nor any other time in 2007 asking for a "Right to Sue" letter. The reason that I did not write to the EEOC asking for said letter was that I was planning to file the instant case in Bronx County Supreme Court under state and city laws and therefore did not need permission from the EEOC to include Title VII. I did in fact file the instant case in Bronx County Supreme Court on November 23, 2007 and it was assigned index number 303042-2007. Defendants later removed the case to federal court.

12.    My Associate, Kathy A. Polias, attended a Court conference in the instant case before The Honorable Shira A. Scheindlin in the United States District Court, Southern District of New York on March 6, 2008. Upon her return from the conference, Ms. Polias informed me that Defense Counsel was attacking on statute of limitations grounds the discrimination and retaliation causes of action that we had asserted in the Complaint under the New York State Human Rights Law and the New York City Human Rights Law. Ms. Polias informed me that Defense Counsel was arguing that the shorter statute of limitations and notice requirements set forth in New York State Education Law Sec. 3813 applied to claims brought under the New York State Human Rights Law and

the New York City Human Rights Law.  The conference on March 6, 2008 was the first

time that Defense Counsel raised this challenge with my office.

13.     Because our State and City law claims were under attack, my office decided

in early March 2008 to explore moving to amend the complaint to include Title VII

actions.  My office had never received a "Right to Sue" letter from the EEOC for

Plaintiff's dually filed complaint, and Plaintiff informed me that he also had never

received a "Right to Sue" letter.  Therefore, my Associate, Kathy A. Polias, Esq. wrote a

letter to the EEOC on March 11, 2008 (a copy of which is annexed hereto as Ex. 6).

Within a few days after she sent the letter, she received a phone call from a representative

of the EEOC who claimed that the EEOC had issued Mr. Fierro a "Right to Sue" letter in

September 2007.  On March 19, 2008, the EEOC sent my office a copy of the "Right to

Sue" letter that it purported to have issued in September 2007.  *See* Ex. 7, annexed hereto.

My office received the letter shortly after March 19, 2008.  We had never received this

letter prior to that.  Furthermore, Plaintiff has informed me that he never received a copy

of this letter at any time.  He didn't even receive a copy from the EEOC when the EEOC

sent it to my office in March 2008.

14.     Although the "Right to Sue" letter is dated September 17, 2007 and is

addressed to Joseph Fierro, there is no indication on the letter that it was sent to Fierro via

certified mail or certified mail, return receipt requested.  Furthermore, neither Mr. Fierro

nor my office requested the letter before September 17, 2007 or at any time in 2007, for

that matter.  Mr. Fierro, in fact, has never directly requested the letter and my office did

not request the letter until March 2008.  This cross-motion to amend the complaint is

being made within ninety days of my office first receiving the "Right to Sue" letter on

Plaintiff's behalf in late March 2008 (after March 19, 2008). Plaintiff himself has never received the letter so late March 2008 should be the date from which the ninety-day period runs. In fact, the "Right to Sue" letter itself states, without any caveats, "Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost."

15.    With regard to Plaintiff's newly asserted claims for breach of contract, tortious interference with contractual relations, and due process violations, Plaintiff's Counsel realized that Plaintiff's counsel realized that Plaintiff had these claims in the course of preparing the cross-motion.

16.    With regard to Plaintiff's proposed amendments to further elaborate on the facts underlying the First Amendment claims, these amendments were motivated by Defendants' challenge to Plaintiff's First Amendment claims in their motion to dismiss.

17.    With regard to the proposed amendment to add the equitable remedy of reinstatement of sick days to each cause of action, Plaintiff alerted my office to this omission in just the past few months.

18.    Although Plaintiff has cross-moved to further amend, because the Court would probably not have made a decision by the time that the 90 days elapsed, Plaintiff has gone on and filed a Complaint asserting his Title VII rights to avoid the possibility that he would be forever foreclosed form asserting Title VII claims based on the 90 day statute of limitations. He also included the other proposed amendments in that Complaint in order to preserve them.

19.    Defendants would not suffer any prejudice from the proposed

amendments to add Title VII claims or from the other proposed amendments. Firstly, the Title VII claims, in terms of substance, are mirror images of the New York City Human Rights Law claims so they would not require any additional discovery.

20.     With regard to Plaintiff's proposed due process, breach of contract, and tortious interference with contractual relations, the subject of these new claims is the transfer of Plaintiff from P12X to P753K, and this occurrence was alleged in the original complaint and subsequent amended complaints and was the subject of a retaliation claim under the New York City Human Rights Law in the original complaint and the subsequent amended complaints.  Because the transfer has been a subject in this lawsuit from the very beginning, Defendants were given the opportunity to incorporate inquiries about the transfer in their interrogatories and document requests.  The new elements that Plaintiff's proposed amendments introduces is the transfer being a violation of the contract between Plaintiff's union and the City of New York/New York City Department of Education, and a violation of the New York City Chancellor's Rules and Regulations. These additional elements would require minimal discovery.  In terms of written discovery, Plaintiff would only need to procure a copy of the union contract and Chancellor's Rules and Regulations that were in effect at the time of the transfer and any documents that the union has concerning Defendants' breach of/tortious interference with the contract in transferring Plaintiff.  No depositions have been conducted in this case so Defendants would have ample opportunity to explore these new claims.  Furthermore, with regard to the depositions that Plaintiff had planned to conduct, the only deposition that these new claims would add would be a deposition of a union representative.

Dated:  Brooklyn, New York
        June 10, 2008

                                    _____/s/ /b/ Anthony C. Ofodile, Esq.__
                                    ANTHONY C. OFODILE, ESQ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

**JOSEPH FIERRO,**

                  Plaintiff,

      -against-

**THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, RONNA BLEADON,**
former Principal, P12X, Special Education District 75, New
York City Department of Education, in her individual
and official capacities, **SHARON BURNETT,** former
Local Instructional Superintendent within Special
Education District 75, New York City Department of
Education, in her individual and official capacities, **DR.
SUSAN ERBER,** former Superintendent, Special
Education District 75, Citywide Programs, New York
City Department of Education, in her individual and
official capacities, and **BONNIE BROWN,** former
Deputy Superintendent (and current Superintendent),
Special Education District 75, Citywide Programs, New
York City Department of Education, in her individual
and official capacities,

                  Defendants.

------------------ -----------------------------------------------------x

Docket #: 07-CV-11214
           (SAS)

**SECOND AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

      Plaintiff JOSEPH FIERRO, by his attorneys, Ofodile & Associates, P.C., complaining of

Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION,

RONNA BLEADON (Principal, P12X, Special Education District 75, New York City

Department of Education), SHARON BURNETT (former Local Instructional Superintendent

within Special Education District 75, New York City Department of Education), DR. SUSAN

ERBER (former Superintendent, Special Education District 75, Citywide Programs, New York

City Department of Education), and BONNIE BROWN [former Deputy Superintendent (and

current Superintendent), Special Education District 75, Citywide Programs, New York City

Department of Education] acting in their individual and official capacities, upon information and belief, alleges as follows:

## NATURE OF ACTION

1.     This is an action at law pursuant to 42 U.S.C. § 1983 to redress retaliatory actions perpetrated by Defendants, who are State actors, against Plaintiff for Plaintiff's exercisig his rights under the First Amendment to the U.S. Constitution, which applies to the States through the Fourteenth Amendment.

2.     This an action at law pursuant to the New York City Administrative Code § 8, et seq. to redress discrimination in employment on the basis of sex and sexual harassment in the workplace. This is also an action pursuant to the aforementioned laws to redress *quid pro quo* harassment/retaliation for resisting sexual advances and retaliation for complaining about sexual harassment.

3.     Plaintiff seeks injunctive and declaratory relief, other equitable relief, compensatory damages, punitive damages, and attorneys' fees and costs and disbursements pursuant to 42 U.S.C. § 1983 and the New York City Administrative Code.

## JURISDICTION AND VENUE

4.     Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28 U.S.C. §  1343(a)(3), this being an action authorized by law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

5.     Venue is proper because the events complained of herein occurred in the Bronx,

New York (County of Bronx), which is within the Southern District of New York.

## PARTIES

6.      During all times relevant and material to this case, Plaintiff Joseph Fierro resided in the State of New York within the jurisdiction of this Court. At all times relevant and material to this case, Plaintiff Joseph Fierro was employed by Defendant City of New York and/or Defendant New York City Department of Education as an Assistant Principal for P12X which encompassed approximately six school sites and was part of Special Education District 75 of the New York City Department of Education. During all times relevant and material to this case, Plaintiff Joseph Fierro, was supervised by, and reported to, Defendant Ronna Bleadon, who was the Principal of P12X.

7.      During all times relevant and material to this case, Defendant City of New York was a municipal corporation incorporated under the laws of the State of New York, and an employer within the meaning of the New York City Administrative Code.

8.      During all times relevant and material to this case, Defendant New York City Department of Education was an agency/department of Defendant City of New York. During times relevant material to this case, Defendant New York City Department of Education was an employer within the meaning of the New York City Administrative Code.

9.      During all times relevant and material to this case, Defendant Ronna Bleadon was employed by Defendant City of New York and/or Defendant New York City Department of Education as the Principal for P12X, which encompassed approximately six school sites and was part of Special Education District 75 of the New York City Department of Education. During all times relevant and material to this case, Defendant Ronna Bleadon was Plaintiff Joseph Fierro's

3

15.     Furthermore, the New York State Division of Human Rights administratively

dismissed the complaint filed before it and vitiated the election of remedies for administrative

convenience giving Plaintiff the right to file this action in this Court.

## FACTUAL ALLEGATIONS

16.     Plaintiff began working as an Assistant Principal for P12X in 2002. P12X is

comprised of approximately six school sites in the South Bronx. It is part of Special Education

District 75 of the New York City Department of Education. The administration of P12X of

which Plaintiff was a part was based at Lewis and Clark High School (2555 Tratman Avenue,

Bronx, NY 10461), which was one of the approximately six school sites that made up P12X.

That was where Defendant Ronna Bleadon, Plaintiff, and the other Assistant Principals of P12X

had their offices. Plaintiff worked as an Assistant Principal for P12X, reporting to and under the

supervision of Defendant Ronna Bleadon, until he was abruptly transferred in the Fall of 2005 to

one of the top 25 most dangerous schools in New York State in retaliation for complaining about

Defendant Bleadon's sexual harassment of him and her retaliation against him.

17.     Defendant Ronna Bleadon's sexual harassment of Plaintiff developed gradually.

When Plaintiff began his employment at P12X and met Defendant Bleadon for the first time in

2002, he was dressed in a suit (as he was almost always dressed at work) and Defendant Bleadon

commented that he was such a handsome guy in a suit. During one-on-one business meetings

that Plaintiff had with his supervisor Defendant Bleadon in her office over the next couple of

years, Defendant Bleadon repeatedly brought up, and spoke in detail, to Plaintiff about her

personal life. She repeatedly told Plaintiff that her ex-husband had beaten her,

degraded/demoralized her, and cheated on her, that she still talked to her ex-husband, that he was

5

a principal at another school, and that she was afraid that he was spreading rumors about her. She also told Plaintiff many times that her current husband traveled often to Europe and other parts of the world and that he was jealous of Plaintiff because she was always telling her husband how wonderful Plaintiff was and what a good job Plaintiff was doing. Plaintiff felt very uncomfortable with these statements and would respond that there was no reason for her husband to be jealous, as she was Plaintiff's principal and he was Plaintiff's assistant principal and they only worked together.

18.     During the first two years, Defendant Ronna Bleadon also made inappropriate comments about Plaintiff's physical appearance, and thereby caused Plaintiff to feel embarrassed, humiliated, and self-conscious. In the summer, Plaintiff wore shorts to work, after having obtained permission to do so because the school was not air conditioned, and Defendant Bleadon often told Plaintiff that he had great legs and that his legs were looking fantastic, and asked him if he had been working out. She even made these statements to him and asked him these questions in front of staff members and administrators from District 75.

19.     In or about the fall of 2004, Defendant Bleadon repeatedly suggested to Plaintiff to come over to her house while her husband was away for the weekend traveling for business and "keep her company." She made these statements/suggestions in person to Plaintiff while they were at work, as well as phoned Plaintiff after she left work and made them. Plaintiff was very uncomfortable with her suggestions and in an attempt to dispel the awkwardness of the situation, he would respond by saying that he had a jealous girlfriend and that she would not like if he went over to Defendant's home.

20.     On one occasion, Defendant Bleadon also asked Plaintiff, "Is it true what they say

6

about Italians?" Plaintiff responded, "What do you mean?" Defendant Bleadon said, "You know." Plaintiff facetiously asked, "What, that we're smart?" Defendant Bleadon said no and repeated "You know."

21.    Furthermore, starting in the fall of 2004, Defendant Bleadon would beckon Plaintiff to her office by saying "Come see mommy" or "Come to Mama Bleadon" in front of other Assistant Principals.

22.    In addition to resisting Defendant Bleadon's sexual advances, Plaintiff also exercised his First Amendment speech in or about the fall of 2004 by refusing to participate in or facilitate Defendant Bleadon's campaigns to ruin the careers of two very good teachers whom Bleadon did not like. Participating in Defendant Bleadon's efforts to blackball these two teachers was not part of Plaintiff's job description or job duties and therefore, he was exercising his First Amendment freedoms as a citizen when he refused to participate. One of the two teachers whom Defendant Bleadon targeted was Ms. Grey. Ms. Grey had broken up a fight between two female students, and Defendant Ronna Bleadon told Plaintiff, who witnessed Ms. Grey breaking up the fight, to lie and say that Ms. Grey had held the head of one of the girls and told the other girl to punch her. Plaintiff told Defendant Bleadon not to turn to him for things like that and that he was not going to lie and destroy this teacher's career.

23.    The other teacher for whom Defendant Bleadon tried to enlist Plaintiff's help in targeting was a shop teacher named Mr. Simon. Defendant Bleadon instructed Plaintiff to go into Mr. Simon's classroom and find things for which the administration could give Mr. Simon a "U" (Unsatisfactory) rating. Plaintiff observed Mr. Simon's classroom and did not find anything that warranted a "U" rating. He told Bleadon same.

7

24.    Defendant Bleadon retaliated against Plaintiff for resisting her sexual advances and/or exercising his First Amendment freedoms. Her retaliatory actions included but were not limited to: (1) using profane language towards Plaintiff in front of staff and students and making abusive and derogatory remarks to him; (2) taking away vacation days from him; (3) directing him to do manual labor and other tasks outside of his job description; (4) making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; (5) taunting Plaintiff over his learning disabilities including but not limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get someone was "too much for [him] to handle with his disability"; (6) harshly criticizing and ostracizing Plaintiff whereas she used to shower him with praise and tell him that he was going to be principal one day; (7) questioning Plaintiff's sexuality and speaking to staff members about whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself); (8) threatening Plaintiff that she would transfer him to West Side High School (which was a site of P12X that was in many ways less desirable than Lewis & Clark) and he wouldn't have all the comforts that he had at Lewis and Clark; (9) actually transferring him to West Side High School; and (10) falsifying latenesses on Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.

25.    Defendant Bleadon followed through on her threat and transferred Plaintiff against his will to West Side High School in the middle of the Spring semester of 2005. After Plaintiff was transferred to West Side, he no longer had his own office, parking spot, computer, or phone, and the atmosphere was much less clean, modern, and maintained than Lewis and

8

Clark. Furthermore, West Side was further from Plaintiff's home than Lewis and Clark and among the damages that he claims in this case is the extra money that he had to spend on gas for his car to travel the extra distance. In addition, by transferring Plaintiff to West Side, Defendant Bleadon separated Plaintiff from the other Assistant Principals of P12X, who were still at Lewis and Clark.

26.     Defendant Bleadon repeatedly called Plaintiff at West Side to taunt him on the transfer. She would ask how he likes it there at West Side and state, "Not the same comforts that you had here." Plaintiff would say to her that he missed his office and he didn't understand why he no longer had his own office, and she would respond, "Well you think about it." In addition, because Bleadon was still Plaintiff's supervisor, he would have to return to Lewis and Clark for one-on-one meetings with her. As they started these meetings, she would tell him to close the door and ask, "So, do you miss me?" or "So, you ready to behave?"

27.     In or about August 2005, Plaintiff complained to Defendant Sharon Burnett – who was then a Local Instructional Superintendent in District 75 supervising P12X among other schools – that Defendant Ronna Bleadon had sexually harassed him and was retaliating against him for rebuffing her advances. Upon Plaintiff's information and belief, Defendant Burnett spoke to Defendants Bonnie Brown and Dr. Susan Erber, who at the time were the Deputy Superintendent and Superintendent of District 75, respectively, about Plaintiff's complaints. In retaliation for Plaintiff's complaints about Defendant Bleadon, Defendant Burnett got back in contact with Plaintiff and told him that it had been decided that he would be transferred to P753K, which was a District 75 high school in Brooklyn that had been named by New York State as one of the top 25 most dangerous schools in the State. Plaintiff told Burnett that he didn't

9

want to go to P753K and that he wanted the issue with Bleadon resolved. Plaintiff explained to

Burnett that P753K was one of the most dangerous schools in the State and that he had already

placed his life at risk at another dangerous school earlier in his career where he had had to

wrestle handguns to the ground and had been stabbed twice. Defendant Burnett told Plaintiff that

he had to go to P753K. Thereby, Plaintiff was transferred against his will to P753K, in

retaliation for complaining about Defendant Bleadon's sexual harassment of him and about her

retaliation against him for rebuffing her advances. Plaintiff, who had already served as Assistant

Principal at P12X for three years, would have received tenure at P12X after another two years

and Defendants' abrupt transfer of him to another school threw a wrench into his progress toward

tenure, and Plaintiff claims as specific damages raises and benefits associated with receiving

tenure.

28.     Plaintiff suffered great emotional, mental, and physical distress as a result of

Defendants' unlawful actions. He received medical treatment for his distress and was prescribed

medication. Among the specific damages that he claims in this case are the insurance co-pays

that he had to pay for the medical visits and medication. In addition, Defendants' actions toward

Plaintiff were a major cause of his having to take a medical leave of absence in the Spring of

2006. He was not paid for approximately 20 days (4 weeks) of this leave of absence, and claims

these lost wages as specific damages in this case.

29.     Furthermore, Plaintiff had planned to undergo training in early 2005 to work one-

on-one with autistic children after school, on weekends, and during the summer. Because there

was a shortage of such workers, Plaintiff would have obtained employment almost immediately

after the training. However, the distress that he suffered from the sexual harassment and the

retaliation prevented him from pursuing the training in early 2005. He was not able to do the

training until the summer of 2006 and the distress from Defendants' actions has been a major

contributing factor to him not being able to start performing the work for which he was trained

until very recently. Therefore, Plaintiff claims as specific damages the wages that he would have

earned in such a position had he not been prevented him from doing the training and starting to

work in early 2005.

30.     Since the filing of the instant action, Plaintiff believes that Defendants City of

New York, New York City Department of Education, and/or Bonnie Brown have perpetrated the

additional retaliatory act of pressuring the Principal of the District 75 school where Plaintiff is a

teacher to terminate him. The Principal of Plaintiff's current school, who is aware of the instant

lawsuit, advised Plaintiff that he didn't think he would be able to have Plaintiff return to his

school as a teacher for the next academic year, even though there are at least two teachers in the

school to whom Plaintiff has seniority and who haven't been threatened with removal.

## FOR A FIRST CAUSE OF ACTION

31.     Plaintiff repeats and realleges paragraphs 1 through 31 as if each paragraph is

repeated verbatim herein.

32.     In violation of the New York City Administrative Code § 8, et seq, Defendants

The City of New York, New York City Department of Education, and Ronna Bleadon

discriminated against Plaintiff on the basis of his male sex in the terms, conditions, and

privileges of his employment by sexually harassing him and subjecting him to a sexually hostile

work environment.

11

## AND AS FOR A SECOND CAUSE OF ACTION

33.     Plaintiff repeats and realleges paragraphs 1 through 32 as if each paragraph is repeated verbatim herein.

34.     In violation of the New York City Administrative Code § 8, et seq., Defendants The City of New York, New York City Department of Education, and Ronna Bleadon retaliated against Plaintiff for rebuffing Defendant Bleadon's sexual advances by subjecting him to a hostile work environment, including but not limited to:  using profane language towards Plaintiff in front of staff and students and making abusive and derogatory remarks to him; taking away vacation days from him; directing him to do manual labor and other tasks outside of his job description; making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; taunting Plaintiff over his learning disabilities including but not limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get someone was "too much for [him] to handle with his disability"; harshly criticizing and ostracizing Plaintiff whereas Defendant Bleadon used to shower him with praise and tell him that he was going to be principal one day; questioning Plaintiff's sexuality and speaking to staff members about whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself); threatening Plaintiff that he would be transferred to West Side (which was a site that was in many ways less desirable than Lewis & Clark) and telling him he wouldn't have all the comforts that he had at Lewis and Clark; actually transferring Plaintiff to West Side; and falsifying latenesses on Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.

12

## AND AS FOR A THIRD CAUSE OF ACTION

35.    Plaintiff repeats and realleges paragraphs 1 through 34 as if each paragraph is repeated verbatim herein.

36.    In violation of the New York City Administrative Code § 8, et seq., Defendants The City of New York, New York City Department of Education, and Ronna Bleadon retaliated against Plaintiff with the tangible action of transferring him to West Side, which was further from his home and much less clean, modern, and maintained than Lewis & Clark and where among other things he was not provided with his own parking spot, computer, or phone and he was separated from the other Assistant Principals.

## AND AS FOR A FOURTH CAUSE OF ACTION

37.    Plaintiff repeats and realleges paragraphs 1 through 36 as if each paragraph is repeated verbatim herein.

38.    In violation of the New York City Administrative Code § 8, et seq., Defendants The City of New York, New York City Department of Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown retaliated against Plaintiff for complaining about Defendant Ronna Bleadon's sexual harassment of him and retaliation against him including by, but not limited to, transferring him, against his will from P12X to P753K, which was one of the top 25 most dangerous schools in New York State. The abrupt transfer threw a wrench into Plaintiff's progress toward tenure.

## AND AS FOR A FIFTH CAUSE OF ACTION

39.    Plaintiff repeats and realleges paragraphs 1 through 38 as if each paragraph is repeated verbatim herein.

13

40.    In violation of the New York City Administrative Code § 8, et seq., Defendants

The City of New York, New York City Department of Education, Sharon Burnett, Dr. Susan

Erber, and Bonnie Brown retaliated against Plaintiff for complaining about Defendant Ronna

Bleadon's sexual harassment of him and retaliation against him by subjecting him to a retaliatory

hostile work environment.

## AND AS FOR A SIXTH CAUSE OF ACTION

41.    Plaintiff realleges and repeats paragraphs 1 through 40 as if each paragraph is

recited and repeated verbatim herein.

42.    While acting under color of State Law, Defendant Ronna Bleadon violated

Plaintiff's First Amendment rights by retaliating against him for exercising his freedom of speech

as a citizen with regard to Defendant Bleadon's efforts to reprimand and falsely implicate two

innocent teachers. Defendant Bleadon retaliated against Plaintiff by subjecting him to a

retaliatory hostile work environment, including but not limited to:  using profane language

towards Plaintiff in front of staff and students and making abusive and derogatory remarks to

him; taking away vacation days from him; directing him to do manual labor and other tasks

outside of his job description; making derogatory remarks about Italian people in front of

Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was

associated with the Mafia; taunting Plaintiff over his learning disabilities including but not

limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get

someone was "too much for [him] to handle with his disability"; harshly criticizing and

ostracizing Plaintiff whereas she used to shower him with praise and tell him that he was going

to be principal one day; questioning Plaintiff's sexuality and speaking to staff members about

14

whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself); threatening Plaintiff that she would transfer him to West Side (which was a site that was in many ways less desirable than Lewis & Clark) and telling him he wouldn't have all the comforts that he had at Lewis and Clark; actually transferring Plaintiff to West Side; and falsifying latenesses on Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.

43.    By violating Plaintiff's First Amendment rights under color of State Law, Defendant Ronna Bleadon violated 42 U.S.C. § 1983.

## AND AS FOR A SEVENTH CAUSE OF ACTION

44.    Plaintiff repeats and realleges paragraphs 1 through 43 as if each paragraph is repeated verbatim herein.

45.    While acting under color of State Law, Defendant Ronna Bleadon violated Plaintiff's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to Defendant Bleadon's efforts to reprimand and falsely implicate two innocent teachers. Defendant Ronna Bleadon retaliated against Plaintiff with the tangible action of transferring him to West Side, which was further from his home and much less clean, modern, and maintained than Lewis & Clark and where among other things he was not provided with his own parking spot, computer, or phone and he was separated from the other Assistant Principals.

46.    By violating Plaintiff's First Amendment rights under color of State Law, Defendant Ronna Bleadon violated 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiff prays for judgment as follows:

**Under the New York City Administrative Code § 8, et seq. for each of the First,**

15

**Second, and Third Causes of Action:**

      i.      declaring the acts and conduct complained of herein in violation of the New York City Administrative Code § 8, et seq.;

      ii.      enjoining and permanently restraining these violations and directing Defendants City of New York, New York City Department of Education, and Ronna Bleadon to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

      iii.      enjoining Defendants City of New York, New York City Department of Education, and Ronna Bleadon from committing or allowing any further harassment of Plaintiff or retaliation against Plaintiff;

      iv.      ordering Defendants City of New York, New York City Department of Education, and Ronna Bleadon, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, mental anguish, and physical distress suffered by Plaintiff;

      v.      awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring 2006 – against Defendants City of New York, New York City Department of Education, and Ronna Bleadon, jointly and severally;

      vi.      awarding Plaintiff specific damages for the wages that he has lost since early 2005 because the distress that he suffered as a result of Defendants'

actions has prevented him from pursuing training and then employment to work one-on-one with autistic children – against Defendants City of New York, New York City Department of Education, Ronna Bleadon, jointly and severally;

vii.    awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he has received for the physical, emotional, and mental distress that he has suffered as a result of Defendants' actions – against Defendants City of New York, New York City Department of Education, and Ronna Bleadon, jointly and severally;

viii.   awarding Plaintiff specific damages for the extra money that he spent on gas having to travel to and from West Side High School – against Defendants City of New York, New York City Department of Education, and Ronna Bleadon, jointly and severally;

ix.     ordering Defendant Ronna Bleadon to pay Plaintiff punitive damages in an amount to be determined at trial;

x.      awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action – against Defendants City of New York, New York City Department of Education, and Ronna Bleadon, jointly and severally; and

xi.     granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under the New York City Administrative Code § 8, et seq. for each of the Fourth**

17

**and Fifth Causes of Action:**

  i.   declaring the acts and conduct complained of herein in violation of the

       New York City Administrative Code § 8, et seq.;

  ii.  enjoining and permanently restraining these violations and directing

       Defendants City of New York, New York City Department of Education,

       Sharon Burnett, Dr. Susan Erber, and Bonnie Brown to take such

       affirmative action as is necessary to ensure that the effects of these

       unlawful employment practices are eliminated;

  iii. enjoining Defendants City of New York, New York City Department of

       Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown from

       committing or allowing any harassment of Plaintiff or retaliation against

       Plaintiff;

  iv.  ordering Defendants City of New York, New York City Department of

       Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly

       and severally, to pay Plaintiff general and compensatory damages in an

       amount to be determined at trial for pain and suffering, humiliation,

       emotional distress, mental anguish, and physical distress suffered by

       Plaintiff;

  v.   ordering Defendants to reinstate Plaintiff to his position as Assistant

       Principal of P12K and to grant him the tenure he would have received had

       he not been transferred to P753K;

  vi.  awarding Plaintiff the raises and benefits associated with tenure that he

would have received had he been allowed to obtain tenure at P12X–
against Defendants City of New York, New York City Department of
Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly
and severally;

vii.    awarding Plaintiff specific damages for the wages that he lost while taking
a medical leave of absence in the Spring 2006 – against Defendants City
of New York, New York City Department of Education, Sharon Burnett,
Dr. Susan Erber, and Bonnie Brown, jointly and severally;

viii.    awarding Plaintiff specific damages for the wages that he has lost since the
Summer of 2005 because the distress that he has suffered as a result of
Defendants' actions prevented him from pursuing training and then
employment to work one-on-one with autistic children – against
Defendants City of New York, New York City Department of Education,
Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

ix.    awarding Plaintiff specific damages for the insurance co-pays that he has
paid for medical treatment and medication that he has received for the
physical, emotional, and mental distress that he has suffered as a result of
Defendants' actions – against Defendants City of New York, New York
City Department of Education, Sharon Burnett, Dr. Susan Erber, and
Bonnie Brown, jointly and severally;

x.    awarding Plaintiff punitive damages in an amount to be determined at trial
– against Defendants Sharon Burnett, Dr. Susan Erber, and Bonnie Brown,

jointly and severally;

xi.     awarding Plaintiff attorneys' fees and the reasonable costs and

disbursements of this action – against Defendants City of New York, New

York City Department of Education, Sharon Burnett, Dr. Susan Erber, and

Bonnie Brown, jointly and severally; and

xii.    granting any other and further relief to the Plaintiff as the Court deems

necessary, just, and proper.

**Under 42 U.S.C. § 1983 and the First Amendment for each of the Sixth and Seventh**

**Causes of Action against Defendant Ronna Bleadon:**

i.      declaring the acts and conduct complained of herein in violation of

Plaintiff's rights under the First Amendment to the United States

Constitution and 42 U.S.C. § 1983;

ii.     enjoining and permanently restraining these violations and directing

Defendant Ronna Bleadon to take such affirmative action as is necessary

to ensure that the effects of these unlawful employment practices are

eliminated;

iii.    enjoining Defendant Ronna Bleadon from committing or allowing any

further harassment of Plaintiff or retaliation against Plaintiff;

iv.     ordering Defendant Ronna Bleadon to pay Plaintiff general and

compensatory damages in an amount to be determined at trial for pain and

suffering, humiliation, emotional distress, and mental anguish suffered by

Plaintiff;

20

v.     awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring 2006;

vi.    awarding Plaintiff specific damages for the wages that he has lost since early 2005 because the distress that he has suffered as a result of Defendant's actions prevented him from pursuing training and then employment to work one-on-one with autistic children;

vii.   awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he received for the physical, emotional, and mental distress that he has suffered as a result of Defendant Bleadon's actions;

viii.  awarding Plaintiff specific damages for the extra money that he spent on gas having to travel to and from West Side High School;

ix.    awarding Plaintiff punitive damages in an amount to be determined at trial;

x.     awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action; and

xi.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

Dated:  Brooklyn, New York
        March 14, 2008

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

Docket #: 07-CV-
11214 (SAS)

**JOSEPH FIERRO,**

                    Plaintiff,

                    -against-

**THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, RONNA BLEADON,**
former Principal, P12X, Special Education District 75, New
York City Department of Education, in her individual
and official capacities, **SHARON BURNETT,** former
Local Instructional Superintendent within Special
Education District 75, New York City Department of
Education, in her individual and official capacities, **DR.
SUSAN ERBER,** former Superintendent, Special
Education District 75, Citywide Programs, New York
City Department of Education, in her individual and
official capacities, and **BONNIE BROWN,** former
Deputy Superintendent (and current Superintendent),
Special Education District 75, Citywide Programs, New
York City Department of Education, in her individual
and official capacities,

                    Defendants.

----------------- ------------------------------------------------------x

## SECOND AMENDED COMPLAINT

OFODILE & ASSOCIATES, P.C.
498 Atlantic Avenue
Brooklyn, NY 11217
Tel. No.: 718-852-8300
Fax No.: 718-852-7361

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x    Docket #: 07-CV-11214 (SAS)
**JOSEPH FIERRO,**

          Plaintiff,

          -against-

**THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, RONNA
BLEADON,** former Principal, P12X, Special
Education District 75, New York City Department of
Education, in her individual and official capacities,
**SHARON BURNETT,** former Local Instructional
Superintendent within Special Education District 75,
New York City Department of Education, in her
individual and official capacities, **DR. SUSAN ERBER,**
former Superintendent, Special Education District 75,
Citywide Programs, New York City Department of
Education, in her individual and official capacities,
and **BONNIE BROWN,** former Deputy Superintendent
(and current Superintendent), Special Education District 75,
Citywide Programs, New York City Department of Education,
in her individual and official capacities,

          Defendants.
---------------- --------------------------------------------------------x

## AFFIDAVIT OF PLAINTIFF JOSEPH FIERRO IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF HIS MOTION TO AMEND THE COMPLAINT

        Joseph Fierro, being duly sworn, deposes and says:

        1.     I am the Plaintiff in the above-captioned action.

### My First Amendment Claims Against Defendant Ronna Bleadon

        2.     I wish to further clarify the facts that underlie my First Amendment claims against

Defendant Ronna Bleadon.  In or about the Fall of 2004, I refused to participate in or facilitate

Defendant Bleadon's efforts to falsely accuse, falsely implicate, and ruin the careers of two very good teachers whom Bleadon did not like. Participating in these efforts was not part of my job description or job duties. One of the two teachers whom Defendant Bleadon targeted was Ms. Grey. I had witnessed Ms. Grey breaking up a fight between two female students. Defendant Ronna Bleadon told me that she wanted me to lie and say that Ms. Grey had held the head of one of the girls and told the other girl to punch her. Defendant Bleadon was basically telling me to falsely implicate Ms. Grey in a crime – the assault of a minor child. In response, I told Defendant Bleadon not to turn to me for things like that and that I was not going to lie and destroy a good teacher's career over personal issues that Defendant Bleadon had with her.

3.      The other teacher for whom Defendant Bleadon tried to enlist my help in targeting was a shop teacher named Mr. Simon. Defendant Bleadon told me to go into Mr. Simon's classroom and find things for which the administration could give Mr. Simon a "U" (Unsatisfactory) rating on his evaluation. In response, I told Defendant Bleadon that I had been to Mr. Simon's classroom on numerous occasions, that I had always observed Mr. Simon doing his job and relating well to his students, and that I had not seen anything that warranted a "U" rating. I further told Defendant Bleadon that she was basically asking me to go and look for things that were not there and that she should not ask me to do that type of thing and that I was not going to do destroy a good teacher's career.

**My Complaint With the U.S. Equal Employment Opportunity Commission**

4.      In or about early 2006, I filed a complaint with the New York State Division of Human Rights regarding, among other things, Defendants' sexual harassment of me, retaliation against me for rebuffing sexual advances, and retaliation against me for complaining about

sexual harassment.  See complaint annexed to Ofodile Aff. as Exhibit 4.  Upon my information

and belief, when I filed this complaint with the New York State Division of Human Rights, it

was dually filed with the U.S. Equal Employment Opportunity Commission (EEOC) and

assigned Federal Charge No.:  16GA601893.

     5.     In March 2008, my attorneys told me that they had written to the EEOC to obtain

a "Right to Sue" letter for the complaint I had filed in or about early 2006.  They had requested

this "Right to Sue" letter so that I could assert claims against the Defendants under Title VII.  My

attorneys further informed me that after they sent this request letter to the EEOC, they received a

phone call from a representative of the EEOC and that the representative claimed that the EEOC

had issued a "Right to Sue" letter in September 2007.  I never received this "Right to Sue" letter

and told my attorneys same.  Furthermore, my attorneys have informed me that before they

received a copy from the EEOC of the letter in March 2008, they had never received it either.

Although my name and address are on the "Right to Sue" letter, I never received this letter.  I did

not even receive a copy from the EEOC when the EEOC sent it to my attorneys in March 2008.

In addition, I never personally requested the "Right to Sue" letter from the EEOC.

Dated:   Brooklyn, New York
          June 9, 2008

                                                  _____
                                                  JOSEPH FIERRO

Sworn to before me on this
9th  day of  June  2008

_____
NOTARY PUBLIC

                              KATHY POLIAS
                    NOTARY PUBLIC, State of New York
                            No. 02PO6154337
                         Qualified in Kings County
                  Commission Expires October 23, 201_

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

**JOSEPH FIERRO,**

                            Plaintiff,

            -against-

**THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF EDUCATION, RONNA
BLEADON,** former Principal, P12X, Special Education
District 75, New York City Department of Education, in
her individual and official capacities, **SHARON
BURNETT,** former Local Instructional Superintendent
within Special Education District 75, New York City
Department of Education, in her individual and official
capacities, **DR. SUSAN ERBER,** former Superintendent,
Special Education District 75, Citywide Programs, New
York City Department of Education, in her individual and
Official capacities, and **BONNIE BROWN,** former Deputy
Superintendent (and current Superintendent), Special
Education District 75, Citywide Programs, New York
City Department of Education, in her individual and
official capacities,

                            Defendants.

----------------- --------------------------------------------------------x

Docket #: 07-CV-11214
                    (SAS)


**PROPOSED THIRD
AMENDED COMPLAINT**



**DEMAND FOR JURY
TRIAL**

            Plaintiff JOSEPH FIERRO, by his attorneys, Ofodile & Associates, P.C., complaining of

Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION,

RONNA BLEADON (Principal, P12X, Special Education District 75, New York City

Department of Education), SHARON BURNETT (former Local Instructional Superintendent

within Special Education District 75, New York City Department of Education), DR. SUSAN

ERBER (former Superintendent, Special Education District 75, Citywide Programs, New York

City Department of Education), and BONNIE BROWN [former Deputy Superintendent (and

current Superintendent), Special Education District 75, Citywide Programs, New York City

1

Department of Education] acting in their individual and official capacities, upon information and belief, alleges as follows:

## NATURE OF ACTION

1.    This an action at law pursuant to Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and the New York City Administrative Code § 8, et seq. to redress discrimination in employment on the basis of sex and sexual harassment in the workplace. This is also an action pursuant to the aforementioned laws to redress *quid pro quo* harassment/retaliation for resisting sexual advances and retaliation for complaining about sexual harassment.

2.    This is also an action at law pursuant to 42 U.S.C. § 1983 to redress retaliatory actions perpetrated by Defendant Ronna Bleadon, who is a State actor, against Plaintiff for Plaintiff's exercising his rights under the First Amendment to the U.S. Constitution, which applies to the States through the Fourteenth Amendment.

3.    This is also an action at law pursuant to 42 U.S.C. § 1983 to redress violations of Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber, who are State actors.

4.    This is also an action at law pursuant to Common Law to redress Defendants' violations of Plaintiff's rights under common law through breach of contract and tortious interference with contractual relations.

5.    Plaintiff seeks injunctive and declaratory relief, other equitable relief, compensatory damages, punitive damages, and attorneys' fees and costs and disbursements

2

pursuant to: Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; 42

U.S.C. § 1983; New York City Administrative Code; and Common Law.

## JURISDICTION AND VENUE

6.     Jurisdiction is specifically conferred on the United States District Court by 28

U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28

U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under

color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities

secured to Plaintiff by: Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et

seq.; the First Amendment to the U.S. Constitution; and 42 U.S.C. § 1983.

7.     Venue is proper because the events complained of herein occurred in the Bronx,

New York (County of Bronx), which is within the Southern District of New York.

## PARTIES

8.     During all times relevant and material to this case, Plaintiff Joseph Fierro resided

in the State of New York within the jurisdiction of this Court. During all times relevant and

material to this case, Plaintiff Joseph Fierro was employed by Defendants City of New York

and/or the New York City Department of Education as an Assistant Principal for P12X which

encompassed approximately six school sites and was part of Special Education District 75 of the

New York City Department of Education. During all times relevant and material to this case,

Plaintiff Joseph Fierro was supervised by, and reported to, Defendant Ronna Bleadon, who was

the Principal of P12X.

9.     During all times relevant and material to this case, Defendant City of New York

was a municipal corporation incorporated under the laws of the State of New York and an

3

employer within the meaning of Title VII and the New York City Administrative Code.

10.     During all times relevant and material to this case, Defendant New York City

Department of Education was an agency/department of Defendant City of New York, which in

turn was a municipal corporation incorporated under the laws of the State of New York. During

times relevant material to this case, Defendant New York City Department of Education was an

employer within the meaning of Title VII and the New York City Administrative Code.

11.     During all times relevant and material to this case, Defendant Ronna Bleadon was

employed by Defendants City of New York and/or the New York City Department of Education

as the Principal for P12X, which encompassed approximately six school sites and was part of

Special Education District 75 of the New York City Department of Education. During all times

relevant and material to this case, Defendant Ronna Bleadon was Plaintiff Joseph Fierro's

supervisor.

12.     During all times relevant and material to this case, Defendant Sharon Burnett was

employed by Defendants City of New York and/or the New York City Department of Education

as a Local Instructional Superintendent within Special Education District 75, New York City

Department of Education.

13.     During all times relevant and material to this case, Defendant Dr. Susan Erber was

employed by Defendants City of New York and/or the New York City Department of Education

as the Superintendent of Special Education District 75, Citywide Programs, New York City

Department of Education.

14.     During all times relevant and material to this case, Defendant Bonnie Brown was

employed by Defendants City of New York and/or the New York City Department of Education

4

as the Deputy Superintendent of Special Education District 75, Citywide Programs, New York

City Department of Education.

15.     During all times relevant and material to this case, Defendants City of New York

and/or the New York City Department of Education was responsible for the actions of

Defendants Ronna Bleadon, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown under the

common law principal agent / *respondeat superior* rule.

## FULFILLMENT OF ADMINISTRATIVE PREREQUISITES

16.     Before the institution of this action, Plaintiff served a copy of the Complaint on

the New York City Corporation Counsel's Office as well as on the New York City Commission

on Human Rights on or about November 21, 2007 in accordance with the requirements of the

Administrative Code of the City of New York § 8-502 (c).

17.     Furthermore, the New York State Division of Human Rights administratively

dismissed the complaint filed before it and vitiated the election of remedies for administrative

convenience giving Plaintiff the right to file this action in this Court.

18.     When Plaintiff filed the complaint with the New York State Division of Human

Rights, the complaint was dually filed with the U.S. Equal Employment Opportunity

Commission under Federal Charge Number 16GA601893. Although the EEOC purports to have

issued a "Right to Sue" letter on September 17, 2007, Plaintiff did not receive this "Right to Sue"

letter at all in 2007. Furthermore, Plaintiff's Counsel did not receive this letter on his behalf at

all in 2007. Plaintiff's Counsel requested a "Right to Sue" letter in a letter to the EEOC on

March 11, 2008 because neither Plaintiff's Counsel nor Plaintiff had received such a letter. *See*

letter dated March 11, 2008 attached. The EEOC sent Plaintiff's Counsel the "Right to Sue"

letter on or about March 19, 2008. *See* postmarked envelope from EEOC, postmarked March 19,

2008, annexed hereto. Plaintiff's Counsel received the "Right to Sue" letter dated September 17,

2007 after March 19, 2008. The "Right to Sue" letter is annexed hereto. Plaintiff himself has

never received this letter. This Complaint is being amended to include causes of action under

Title VII within ninety days of the receipt of the Notice of Right to Sue. Prior to the

commencement of this action, the EEOC has not filed any action nor has it entered into any

conciliation agreement regarding the allegations in this complaint.

## FACTUAL ALLEGATIONS

19.     Plaintiff began working as an Assistant Principal for P12X in 2002. P12X is

comprised of approximately six school sites in the South Bronx. It is part of Special Education

District 75 of the New York City Department of Education. The administration of P12X of

which Plaintiff was a part was based at Lewis and Clark High School (2555 Tratman Avenue,

Bronx, NY 10461), which was one of the approximately six school sites that made up P12X.

That was where Defendant Ronna Bleadon, Plaintiff, and the other Assistant Principals of P12X

had their offices. Plaintiff worked as an Assistant Principal for P12X, reporting to and under the

supervision of Defendant Ronna Bleadon, until he was abruptly transferred in the Fall of 2005 to

one of the top 25 most dangerous schools in New York State in retaliation for complaining about

Defendant Bleadon's sexual harassment of him and her retaliation against him.

20.     Defendant Ronna Bleadon's sexual harassment of Plaintiff developed gradually.

When Plaintiff began his employment at P12X and met Defendant Bleadon for the first time in

2002, he was dressed in a suit (as he was almost always dressed at work) and Defendant Bleadon

commented that he was such a handsome guy in a suit. During one-on-one business meetings

6

that Plaintiff had with his supervisor Defendant Bleadon in her office over the next couple of

years, Defendant Bleadon repeatedly brought up, and spoke in detail, to Plaintiff about her

personal life. She repeatedly told Plaintiff that her ex-husband had beaten her,

degraded/demoralized her, and cheated on her, that she still talked to her ex-husband, that he was

a principal at another school, and that she was afraid that he was spreading rumors about her.

She also told Plaintiff many times that her current husband traveled often to Europe and other

parts of the world and that he was jealous of Plaintiff because she was always telling her husband

how wonderful Plaintiff was and what a good job Plaintiff was doing. Plaintiff felt very

uncomfortable with these statements and would respond that there was no reason for her husband

to be jealous, as she was Plaintiff's principal and he was Plaintiff's assistant principal and they

only worked together.

21.    During the first two years, Defendant Ronna Bleadon also made inappropriate

comments about Plaintiff's physical appearance, and thereby caused Plaintiff to feel embarrassed,

humiliated, and self-conscious. In the summer, Plaintiff wore shorts to work, after having

obtained permission to do so because the school was not air conditioned, and Defendant Bleadon

often told Plaintiff that he had great legs and that his legs were looking fantastic, and asked him

if he had been working out. She even made these statements to him and asked him these

questions in front of staff members and administrators from District 75.

22.    In or about the fall of 2004, Defendant Bleadon repeatedly suggested to Plaintiff

to come over to her house while her husband was away for the weekend traveling for business

and "keep her company." She made these statements/suggestions in person to Plaintiff while

they were at work, as well as phoned Plaintiff after she left work and made them. Plaintiff was

7

very uncomfortable with her suggestions and in an attempt to dispel the awkwardness of the

situation, he would respond by saying that he had a jealous girlfriend and that she would not like

if he went over to Defendant's home.

23.    On one occasion, Defendant Bleadon also asked Plaintiff, "Is it true what they say

about Italians?" Plaintiff responded, "What do you mean?" Defendant Bleadon said, "You

know." Plaintiff facetiously asked, "What, that we're smart?" Defendant Bleadon said no and

repeated "You know."

24.    Furthermore, starting in the fall of 2004, Defendant Bleadon would beckon

Plaintiff to her office by saying "Come see mommy" or "Come to Mama Bleadon" in front of

other Assistant Principals.

25.    In addition to resisting Defendant Bleadon's sexual advances, Plaintiff also

exercised his First Amendment speech in or about the fall of 2004 by refusing to participate in or

facilitate Defendant Bleadon's efforts to falsely accuse, falsely implicate, and ruin the careers of

two very good teachers whom Bleadon did not like. Participating in these efforts was not part of

Plaintiff's job description or job duties and therefore, he was exercising his First Amendment

freedoms as a citizen when he refused to participate. One of the two teachers whom Defendant

Bleadon targeted was Ms. Grey. Ms. Grey had broken up a fight between two female students,

and Defendant Ronna Bleadon told Plaintiff, who had witnessed Ms. Grey breaking up the fight,

to lie and say that Ms. Grey had held the head of one of the girls and told the other girl to punch

her. Defendant Bleadon was basically telling Plaintiff to falsely implicate Ms. Grey in a crime –

the assault of a minor child. Plaintiff told Defendant Bleadon not to turn to him for things like

that and that he was not going to lie and destroy a good teacher's career over personal issues that

8

Defendant Bleadon had with her. Plaintiff acted as a citizen when he refuted and objected to Defendant Bleadon's efforts to falsely implicate Ms. Grey in the assault.

26.     The other teacher for whom Defendant Bleadon tried to enlist Plaintiff's help in targeting was a shop teacher named Mr. Simon. Defendant Bleadon told Plaintiff to go into Mr. Simon's classroom and find things for which the administration could give Mr. Simon a "U" (Unsatisfactory) rating on his evaluation. In response, Plaintiff told Defendant Bleadon that he had been to Mr. Simon's classroom on numerous occasions, that he had always observed Mr. Simon doing his job and relating well to his students, and that he had not seen anything that warranted a "U" rating. Plaintiff further told Defendant Bleadon that she was basically asking Plaintiff to go and look for things that were not there and that she should not ask him to do that type of thing and that he was not going to do destroy a good teacher's career. Plaintiff acted as a citizen when he refuted and objected to Defendant Bleadon's attempt to make false allegations against Mr. Simon and to falsify his evaluation.

27.     Defendant Bleadon retaliated against Plaintiff for resisting her sexual advances and/or exercising his First Amendment freedoms. Her retaliatory actions included but were not limited to: (1) using profane language towards Plaintiff in front of staff and students and making abusive and derogatory remarks to him; (2) taking away vacation days from him; (3) directing him to do manual labor and other tasks outside of his job description; (4) making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; (5) taunting Plaintiff over his learning disabilities including but not limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get someone was "too much for [him] to handle with his

9

disability"; (6) harshly criticizing and ostracizing Plaintiff whereas she used to shower him with praise and tell him that he was going to be principal one day; (7) questioning Plaintiff's sexuality and speaking to staff members about whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself); (8) threatening Plaintiff that she would transfer him to West Side High School (which was a site of P12X that was in many ways less desirable than Lewis & Clark) and he wouldn't have all the comforts that he had at Lewis and Clark; (9) actually transferring him to West Side High School; and (10) falsifying latenesses on Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.

28.     Defendant Bleadon followed through on her threat and transferred Plaintiff against his will to West Side High School in the middle of the Spring semester of 2005. After Plaintiff was transferred to West Side, he no longer had his own office, parking spot, computer, or phone, and the atmosphere was much less clean, modern, and maintained than Lewis and Clark. Furthermore, West Side was further from Plaintiff's home than Lewis and Clark and among the damages that he claims in this case is the extra money that he had to spend on gas for his car to travel the extra distance. In addition, by transferring Plaintiff to West Side, Defendant Bleadon separated Plaintiff from the other Assistant Principals of P12X, who were still at Lewis and Clark.

29.     Defendant Bleadon repeatedly called Plaintiff at West Side to taunt him on the transfer. She would ask how he likes it there at West Side and state, "Not the same comforts that you had here." Plaintiff would say to her that he missed his office and he didn't understand why he no longer had his own office, and she would respond, "Well you think about it." In addition,

10

because Bleadon was still Plaintiff's supervisor, he would have to return to Lewis and Clark for one-on-one meetings with her. As they started these meetings, she would tell him to close the door and ask, "So, do you miss me?" or "So, you ready to behave?"

30.    In or about August 2005, Plaintiff complained to Defendant Sharon Burnett – who was then a Local Instructional Superintendent in District 75 supervising P12X among other schools – that Defendant Ronna Bleadon had sexually harassed him and was retaliating against him for rebuffing her advances. Upon Plaintiff's information and belief, Defendant Burnett spoke to Defendants Bonnie Brown and Dr. Susan Erber, who at the time were the Deputy Superintendent and Superintendent of District 75, respectively, about Plaintiff's complaints. In retaliation for Plaintiff's complaints about Defendant Bleadon, Defendant Burnett got back in contact with Plaintiff and told him that it had been decided that he would be transferred to P753K, which was a District 75 high school in Brooklyn that had been named by New York State as one of the top 25 most dangerous schools in the State. Plaintiff told Burnett that he didn't want to go to P753K and that he wanted the issue with Bleadon resolved. Plaintiff explained to Burnett that P753K was one of the most dangerous schools in the State and that he had already placed his life at risk at another dangerous school earlier in his career where he had had to wrestle handguns to the ground and had been stabbed twice. Defendant Burnett told Plaintiff that he had to go to P753K. Thereby, Plaintiff was transferred against his will to P753K, in retaliation for complaining about Defendant Bleadon's sexual harassment of him and about her retaliation against him for rebuffing her advances. Plaintiff, who had already served as Assistant Principal at P12X for three years, would have received tenure at P12X after another two years and Defendants' abrupt transfer of him to another school threw a wrench into his progress toward

11

tenure, and Plaintiff claims as specific damages raises and benefits associated with receiving tenure.

31.    Furthermore, Plaintiff was a member of the union, Council of School Supervisors and Administrators (CSA), which was Local 1 of the American Federation of School Administrators, AFL-CIO. Defendants' abrupt transfer of Plaintiff to another school was a violation of the CSA's contract/agreement with the City of New York and/or the New York City Department of Education. It was also a violation of the New York City Chancellor's Rules and Regulations.

32.    Plaintiff suffered great emotional, mental, and physical distress as a result of Defendants' unlawful actions. He received medical treatment for his distress and was prescribed medication. Among the specific damages that he claims in this case are the insurance co-pays that he had to pay for the medical visits and medication. In addition, Defendants' actions toward Plaintiff were a major cause of his having to take a medical leave of absence in the Spring of 2006. He was not paid for approximately 20 days (4 weeks) of this leave of absence, and claims these lost wages as specific damages in this case. He also claims reinstatement of his sick days.

33.    Furthermore, Plaintiff had planned to undergo training in early 2005 to work one-on-one with autistic children after school, on weekends, and during the summer. Because there was a shortage of such workers, Plaintiff would have obtained employment almost immediately after the training. However, the distress that he suffered from the sexual harassment and the retaliation prevented him from pursuing the training in early 2005. He was not able to do the training until the summer of 2006 and the distress from Defendants' actions was a major contributing factor to him not being able to start performing the work for which he was trained

12

until recently. Therefore, Plaintiff claims as specific damages the wages that he would have earned in such a position had he not been prevented him from doing the training and starting to work in early 2005.

34.    Since the filing of the instant action, Plaintiff believes that Defendants have perpetrated the additional retaliatory act of pressuring the Principal of the District 75 school where Plaintiff is a teacher to terminate him. The Principal of Plaintiff's current school, who is aware of the instant lawsuit, advised Plaintiff that he didn't think he would be able to have Plaintiff return to his school as a teacher for the next academic year, even though there are at least two teachers in the school to whom Plaintiff has seniority and who haven't been threatened with removal.

## FOR A FIRST CAUSE OF ACTION

35.    Plaintiff repeats and realleges paragraphs 1 through 34 as if each paragraph is repeated verbatim herein.

36.    In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Defendants City of New York and/or the New York City Department of Education discriminated against Plaintiff on the basis of his male sex in the terms, conditions, and privileges of his employment by sexually harassing him and subjecting him to a sexually hostile work environment.

## AND AS FOR A SECOND CAUSE OF ACTION

37.    Plaintiff repeats and realleges paragraphs 1 through 36 as if each paragraph is repeated verbatim herein.

38.    In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. §

13

2000e, et seq., Defendants City of New York and/or the New York City Department of Education

retaliated against Plaintiff for rebuffing Defendant Bleadon's sexual advances by subjecting him

to a hostile work environment, including but not limited to:  using profane language towards

Plaintiff in front of staff and students and making abusive and derogatory remarks to him; taking

away vacation days from him; directing him to do manual labor and other tasks outside of his job

description; making derogatory remarks about Italian people in front of Plaintiff, knowing that

Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia;

taunting Plaintiff over his learning disabilities including but not limited to by referring to him as

"brain dead" and asking him if going to the fourth floor to get someone was "too much for [him]

to handle with his disability"; harshly criticizing and ostracizing Plaintiff whereas Defendant

Bleadon used to shower him with praise and tell him that he was going to be principal one day;

questioning Plaintiff's sexuality and speaking to staff members about whether Plaintiff was gay,

which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of

itself); threatening Plaintiff that he would be transferred to West Side (which was a site that was

in many ways less desirable than Lewis & Clark) and telling him he wouldn't have all the

comforts that he had at Lewis and Clark; actually transferring Plaintiff to West Side; and

falsifying latenesses on Plaintiff's attendance record and then charging him with these false

latenesses in his 2005 annual evaluation.

## AND AS FOR A THIRD CAUSE OF ACTION

39.    Plaintiff repeats and realleges paragraphs 1 through 38 as if each paragraph is

repeated verbatim herein.

40.    In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e, et seq., Defendants City of New York and/or the New York City Department of Education

retaliated against Plaintiff with the tangible action of transferring him to West Side, which was

further from his home and much less clean, modern, and maintained than Lewis & Clark and

where among other things he was not provided with his own parking spot, computer, or phone

and he was separated from the other Assistant Principals.

## AND AS FOR A FOURTH CAUSE OF ACTION

41.    Plaintiff repeats and realleges paragraphs 1 through 40 as if each paragraph is

repeated verbatim herein.

42.    In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e, et seq., Defendants City of New York and/or the New York City Department of Education

retaliated against Plaintiff for complaining about Defendant Ronna Bleadon's sexual harassment

of him and retaliation against him including by, but not limited to, transferring him, against his

will from P12X to P753K, which was one of the top 25 most dangerous schools in New York

State.

## AND AS FOR A FIFTH CAUSE OF ACTION

43.    Plaintiff repeats and realleges paragraphs 1 through 42 as if each paragraph is

repeated verbatim herein.

44.    In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e, et seq., Defendants City of New York and/or the New York City Department of Education

retaliated against Plaintiff for complaining about Defendant Ronna Bleadon's sexual harassment

of him and retaliation against him by subjecting him to a retaliatory hostile work environment.

15

## AND AS FOR A SIXTH CAUSE OF ACTION

45.    Plaintiff repeats and realleges paragraphs 1 through 44 as if each paragraph is repeated verbatim herein.

46.    In violation of the New York City Administrative Code § 8, et seq, Defendant Ronna Bleadon, and Defendant City of New York and/or Defendant New York City Department of Education, discriminated against Plaintiff on the basis of his male sex in the terms, conditions, and privileges of his employment by sexually harassing him and subjecting him to a sexually hostile work environment.

## AND AS FOR A SEVENTH CAUSE OF ACTION

47.    Plaintiff repeats and realleges paragraphs 1 through 46 as if each paragraph is repeated verbatim herein.

48.    In violation of the New York City Administrative Code § 8, et seq., Defendant Ronna Bleadon, and Defendant City of New York and/or Defendant New York City Department of Education, retaliated against Plaintiff for rebuffing Defendant Bleadon's sexual advances by subjecting him to a hostile work environment, including but not limited to:  using profane language towards Plaintiff in front of staff and students and making abusive and derogatory remarks to him; taking away vacation days from him; directing him to do manual labor and other tasks outside of his job description; making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; taunting Plaintiff over his learning disabilities including but not limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get someone was "too much for [him] to handle with his disability"; harshly criticizing and

16

ostracizing Plaintiff whereas Defendant Bleadon used to shower him with praise and tell him that

he was going to be principal one day; questioning Plaintiff's sexuality and speaking to staff

members about whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory

action but sexual harassment in and of itself); threatening Plaintiff that he would be transferred to

West Side (which was a site that was in many ways less desirable than Lewis & Clark) and

telling him he wouldn't have all the comforts that he had at Lewis and Clark; actually transferring

Plaintiff to West Side; and falsifying latenesses on Plaintiff's attendance record and then charging

him with these false latenesses in his 2005 annual evaluation.

## AND AS FOR AN EIGHTH CAUSE OF ACTION

49.    Plaintiff repeats and realleges paragraphs 1 through 48 as if each paragraph is

repeated verbatim herein.

50.    In violation of the New York City Administrative Code § 8, et seq., Defendant

Ronna Bleadon, and Defendant City of New York and/or Defendant New York City Department

of Education, retaliated against Plaintiff with the tangible action of transferring him to West Side,

which was further from his home and much less clean, modern, and maintained than Lewis &

Clark and where among other things he was not provided with his own parking spot, computer,

or phone and he was separated from the other Assistant Principals.

## AND AS FOR A NINTH CAUSE OF ACTION

51.    Plaintiff repeats and realleges paragraphs 1 through 50 as if each paragraph is

repeated verbatim herein.

52.    In violation of the New York City Administrative Code § 8, et seq., Defendants

Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, and Defendant City of New York and/or

17

Defendant New York City Department of Education, retaliated against Plaintiff for complaining about Defendant Ronna Bleadon's sexual harassment of him and retaliation against him including by, but not limited to, transferring him, against his will from P12X to P753K, which was one of the top 25 most dangerous schools in New York State. The abrupt transfer threw a wrench into Plaintiff's progress toward tenure.

### AND AS FOR A TENTH CAUSE OF ACTION

53.    Plaintiff repeats and realleges paragraphs 1 through 52 as if each paragraph is repeated verbatim herein.

54.    In violation of the New York City Administrative Code § 8, et seq., Defendants Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, and Defendant City of New York and/or Defendant New York City Department of Education, retaliated against Plaintiff for complaining about Defendant Ronna Bleadon's sexual harassment of him and retaliation against him by subjecting him to a retaliatory hostile work environment.

### AND AS FOR AN ELEVENTH CAUSE OF ACTION

55.    Plaintiff realleges and repeats paragraphs 1 through 54 as if each paragraph is recited and repeated verbatim herein.

56.    While acting under color of State Law, Defendant Ronna Bleadon violated Plaintiff's First and Fourteenth Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to Defendant Bleadon's efforts to make false allegations against, falsely implicate, and destroy the careers of two very good teachers. Defendant Bleadon retaliated against Plaintiff by subjecting him to a retaliatory hostile work environment, including but not limited to: using profane language towards Plaintiff in front of

18

staff and students and making abusive and derogatory remarks to him; taking away vacation days

from him; directing him to do manual labor and other tasks outside of his job description;

making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is

Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; taunting

Plaintiff over his learning disabilities including but not limited to by referring to him as "brain

dead" and asking him if going to the fourth floor to get someone was "too much for [him] to

handle with his disability"; harshly criticizing and ostracizing Plaintiff whereas she used to

shower him with praise and tell him that he was going to be principal one day; questioning

Plaintiff's sexuality and speaking to staff members about whether Plaintiff was gay, which

Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself);

threatening Plaintiff that she would transfer him to West Side (which was a site that was in many

ways less desirable than Lewis & Clark) and telling him he wouldn't have all the comforts that he

had at Lewis and Clark; actually transferring Plaintiff to West Side; and falsifying latenesses on

Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual

evaluation.

57.     By violating Plaintiff's First and Fourteenth Amendment rights while acting under

color of State Law, Defendant Ronna Bleadon violated 42 U.S.C. § 1983.

## AND AS FOR A TWELFTH CAUSE OF ACTION

58.     Plaintiff repeats and realleges paragraphs 1 through 57 as if each paragraph is

repeated verbatim herein.

59.     While acting under color of State Law, Defendant Ronna Bleadon violated

Plaintiff's First and Fourteenth Amendment rights by retaliating against him for exercising his

freedom of speech as a citizen with regard to Defendant Bleadon's efforts to make false allegations against, falsely implicate, and destroy the careers of two very good teachers. Defendant Ronna Bleadon retaliated against Plaintiff with the tangible action of transferring him to West Side, which was further from his home and much less clean, modern, and maintained than Lewis & Clark and where among other things he was not provided with his own parking spot, computer, or phone and he was separated from the other Assistant Principals.

60.     By violating Plaintiff's First and Fourteenth Amendment rights while acting under color of State Law, Defendant Ronna Bleadon violated 42 U.S.C. § 1983.

## AND AS FOR A THIRTEENTH CAUSE OF ACTION

61.     Plaintiff repeats and realleges paragraphs 1 through 60 as if each paragraph is repeated verbatim herein.

62.     Defendants City of New York and/or the New York City Department of Education breached the contract that it/they had with Plaintiff's union, CSA, by transferring Plaintiff, an Assistant Principal appointed at P12X, to another school. Plaintiff was a beneficiary of this contract. The breach threw a wrench into Plaintiff's progress toward tenure.

## AND AS FOR A FOURTEENTH CAUSE OF ACTION

63.     Plaintiff repeats and re-alleges paragraphs 1 through 62 as if each paragraph is repeated verbatim herein.

64.     Plaintiff, through his membership in the CSA, had a contract of employment with Defendants City of New York and/or the New York City Department of Education. Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber knew that Plaintiff had said contract of employment and intentionally and arbitrarily procured the breach of that contract by transferring

20

Plaintiff from P12X, where he had been appointed as Assistant Principal, to P753K.

65.     In transferring Plaintiff to another school, Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber acted in bad faith and acted purely out of self-interest, animosity, and vindictiveness against Plaintiff, thus exceeding the limits of their authority. With reference to the foregoing, their actions were neither justified nor taken in the interest of the City of New York and/or the New York City Department of Education.

66.     Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber knew that they were acting improperly, illegally, and maliciously in transferring Plaintiff to another school. Their abrupt transfer of Plaintiff to another school caused Plaintiff damage.

67.     Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber were not parties to Plaintiff's contract of employment with the City of New York and/or the New York City Department of Education. In maliciously transferring Plaintiff, Defendants Burnett, Brown, and Erber acted outside the boundaries of their employment, and intentionally and tortiously interfered with Plaintiff's contract of employment with Defendants City of New York and/or the New York City Department of Education, and thereby are liable to Plaintiff for the Common Law tort of Tortious Interference with Contractual Relations.

### AND AS FOR A FIFTEENTH CAUSE OF ACTION

68.     Plaintiff repeats and realleges paragraphs 1 through 67 as if each paragraph is repeated verbatim herein.

69.     While acting under color of State Law, Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber violated Plaintiff's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution by transferring Plaintiff from P12X,

where he had been appointed as an Assistant Principal, to another school without a hearing.

70. By violating Plaintiff's Fifth and Fourteenth rights to the United States Constitution while acting under color of State Law, Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber violated 42 U.S.C. § 1983.

## AND AS FOR A NINTH CAUSE OF ACTION

71. Plaintiff repeats and realleges paragraphs 1 through 70 as if each paragraph is repeated verbatim herein.

72 While acting under color of State Law, Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber conspired to violate Plaintiff's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution by conspiring to transfer Plaintiff from P12X, where he had been appointed as an Assistant Principal, to another school without a hearing.

73. By conspiring to violate Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution while acting under color of State law, Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber violated 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiff prays for judgment as follows:

**Under Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., for each of the First, Second, Third, Fourth, and Fifth Causes of Action against Defendant New York City Department of Education:**

      i.    declaring the acts and conduct complained of herein in violation of the Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.;

ii.    enjoining and permanently restraining these violations and directing

Defendants City of New York and/or the New York City Department of

Education to take such affirmative action as is necessary to ensure that the

effects of these unlawful employment practices are eliminated;

iii.    enjoining Defendants City of New York and/or the New York City

Department of Education from committing or allowing any further

harassment of Plaintiff or retaliation against Plaintiff;

iv.    ordering Defendants City of New York and/or the New York City

Department of Education, jointly and severally, to pay Plaintiff general

and compensatory damages in an amount to be determined at trial for pain

and suffering, humiliation, emotional distress, mental anguish, and

physical distress suffered by Plaintiff;

v.    awarding Plaintiff specific damages for the wages that he lost while taking

a medical leave of absence in the Spring of 2006;

vi.    ordering Defendants to reinstate the sick days that Plaintiff used for the

medical leave of absence that he took in the Spring of 2006;

vii.    awarding Plaintiff specific damages for the wages that he has lost since

early 2005 because the distress that he suffered as a result of Defendants'

actions severely delayed him pursuing training and then employment to

work one-on-one with autistic children;

viii.    awarding Plaintiff specific damages for the insurance co-pays that he has

paid for medical treatment and medication that he has received for the

23

physical, emotional, and mental distress that he has suffered as a result of Defendants' actions;

ix.     awarding Plaintiff specific damages for the extra money that he spent on gas having to travel to and from West Side High School;

x.      awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action; and

xi.     granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under the New York City Administrative Code § 8, et seq. for each of the Sixth, Seventh, and Eighth Causes of Action:**

i.      declaring the acts and conduct complained of herein in violation of the New York City Administrative Code § 8, et seq.;

ii.     enjoining and permanently restraining these violations and directing Defendants City of New York, New York City Department of Education and Ronna Bleadon to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii.    enjoining Defendants City of New York, New York City Department of Education and Ronna Bleadon from committing or allowing any further harassment of Plaintiff or retaliation against Plaintiff;

iv.     ordering Defendants City of New York, New York City Department of Education, and Ronna Bleadon, jointly and severally, to pay Plaintiff

24

general and compensatory damages in an amount to be determined at trial

for pain and suffering, humiliation, emotional distress, mental anguish,

and physical distress suffered by Plaintiff;

v.  awarding Plaintiff specific damages for the wages that he lost while taking

a medical leave of absence in the Spring of 2006 – against Defendants City

of New York, New York City Department of Education, and Ronna

Bleadon, jointly and severally;

vi.  ordering Defendants to reinstate the sick days that Plaintiff used for the

medical leave of absence that he took in the Spring of 2006;

vii.  awarding Plaintiff specific damages for the wages that he has lost since

early 2005 because the distress that he suffered as a result of Defendants'

actions severely delayed his pursuing training and then employment to

work one-on-one with autistic children – against Defendants City of New

York, New York City Department of Education and Ronna Bleadon,

jointly and severally;

viii.  awarding Plaintiff specific damages for the insurance co-pays that he has

paid for medical treatment and medication that he has received for the

physical, emotional, and mental distress that he has suffered as a result of

Defendants' actions – against Defendants City of New York, New York

City Department of Education, and Ronna Bleadon, jointly and severally;

ix.  awarding Plaintiff specific damages for the extra money that he spent on

gas having to travel to and from West Side High School – against

Defendants City of New York, New York City Department of Education, and Ronna Bleadon, jointly and severally;

x.    ordering Defendant Ronna Bleadon to pay Plaintiff punitive damages in an amount to be determined at trial;

xi.   awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action – against Defendants City of New York, New York City Department of Education, and Ronna Bleadon, jointly and severally; and

xii.  granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under the New York City Administrative Code § 8, et seq. for each of the Ninth and Tenth Causes of Action:**

i.    declaring the acts and conduct complained of herein in violation of the New York City Administrative Code § 8, et seq.;

ii.   enjoining and permanently restraining these violations and directing Defendants City of New York, New York City Department of Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

iii.  enjoining Defendants City of New York, New York City Department of Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown from committing or allowing any harassment of Plaintiff or retaliation against

26

Plaintiff;

iv.    ordering Defendants City of New York, New York City Department of

Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly

and severally, to pay Plaintiff general and compensatory damages in an

amount to be determined at trial for pain and suffering, humiliation,

emotional distress, mental anguish, and physical distress suffered by

Plaintiff;

v.    ordering Defendants to reinstate Plaintiff to his position as Assistant

Principal of P12X and to grant him the tenure he would have received had

he not been transferred to P753K;

vi.    ordering Defendants to reinstate the sick days that Plaintiff used for the

medical leave of absence that he took in the Spring of 2006;

vii.    awarding Plaintiff the raises and benefits associated with tenure that he

would have received had he been allowed to obtain tenure at P12X–

against Defendants City of New York, New York City Department of

Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly

and severally;

viii.    awarding Plaintiff specific damages for the wages that he lost while taking

a medical leave of absence in the Spring of 2006 – against Defendants City

of New York, New York City Department of Education, Sharon Burnett,

Dr. Susan Erber, and Bonnie Brown, jointly and severally;

ix.    awarding Plaintiff specific damages for the wages that he has lost since the

Summer of 2005 because the distress that he has suffered as a result of Defendants' actions severely delayed his pursuing training and then employment to work one-on-one with autistic children – against Defendants City of New York, New York City Department of Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

x.    awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he has received for the physical, emotional, and mental distress that he has suffered as a result of Defendants' actions – against Defendants City of New York, New York City Department of Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

xi.   awarding Plaintiff punitive damages in an amount to be determined at trial – against Defendants Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally;

xii.  awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action – against Defendants City of New York, New York City Department of Education, Sharon Burnett, Dr. Susan Erber, and Bonnie Brown, jointly and severally; and

xiii. granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under 42 U.S.C. § 1983 and the First and Fourteenth Amendments for each of the Eleventh and Twelfth Causes of Action against Defendant Ronna Bleadon:**

28

i.    declaring the acts and conduct complained of herein in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

ii.    enjoining and permanently restraining these violations and directing Defendant Ronna Bleadon to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated;

iii.    enjoining Defendant Ronna Bleadon from committing or allowing any further harassment of Plaintiff or retaliation against Plaintiff;

iv.    ordering Defendant Ronna Bleadon to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, and mental anguish suffered by Plaintiff;

v.    awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring of 2006;

vi.    ordering Defendant to reinstate the sick days that Plaintiff used for the medical leave of absence that he took in the Spring of 2006;

vii.    awarding Plaintiff specific damages for the wages that he has lost since early 2005 because the distress that he has suffered as a result of Defendant's actions severely delayed his pursuing training and then employment to work one-on-one with autistic children;

viii.    awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he received for the

29

physical, emotional, and mental distress that he has suffered as a result of
Defendant Bleadon's actions;

ix.    awarding Plaintiff specific damages for the extra money that he spent on
gas having to travel to and from West Side High School;

x.    awarding Plaintiff punitive damages in an amount to be determined at
trial;

xi.    awarding Plaintiff attorneys' fees and the reasonable costs and
disbursements of this action; and

xii.    granting any other and further relief to the Plaintiff as the Court deems
necessary, just, and proper.

**Under Common Law breach of contract for the Thirteenth Cause of Action against
Defendant New York City Department of Education:**

i.    declaring the acts and conduct complained of herein in violation of
Common Law;

ii.    enjoining and permanently restraining further breaches and directing
Defendants City of New York and/or the New York City Department of
Education to take such affirmative action as is necessary to ensure that the
effects of this unlawful practice are eliminated;

iii.    ordering Defendants City of New York and/or the New York City
Department of Education, jointly and severally to pay Plaintiff general and
compensatory damages in an amount to be determined at trial for pain and
suffering, humiliation, emotional distress, and mental anguish suffered by

30

Plaintiff as a result of the breach;

iv.    awarding Plaintiff specific damages for the wages that Plaintiff lost while taking a medical leave of absence in the Spring of 2006;

v.    ordering Defendants to reinstate the sick days that Plaintiff used for the medical leave of absence that he took in the Spring of 2006;

vi.    awarding Plaintiff specific damages for the wages that he has lost since early 2005 because the distress that he has suffered as a result of Defendants' actions severely delayed his pursuing training and then employment to work one-on-one with autistic children;

vii.    awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he received for the physical, emotional, and mental distress that he has suffered as a result of Defendants' actions;

viii.    awarding Plaintiff the reasonable costs and disbursements of this action; and

ix.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under Common Law tortious interference with contractual relations for the Fourteenth Cause of Action against Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber, jointly and severally:**

i.    declaring the acts and conduct complained of herein in violation of Common Law;

31

ii.    enjoining and permanently restraining further acts of tortuous interference

with contractual relations and directing Defendants Burnett, Brown, and

Erber to take such affirmative action as is necessary to ensure that the

effects of this unlawful practice are eliminated;

iii.   ordering Defendants Burnett, Brown, and Erber, jointly and severally, to

pay Plaintiff general and compensatory damages in an amount to be

determined at trial for pain and suffering, humiliation, emotional distress,

and mental anguish suffered by Plaintiff;

iv.    awarding Plaintiff specific damages for the wages that Plaintiff lost while

taking a medical leave of absence in the Spring of 2006;

v.     ordering Defendants to reinstate the sick days that Plaintiff used for the

medical leave of absence that he took in the Spring of 2006;

vi.    awarding Plaintiff specific damages for the wages that he has lost since

early 2005 because the distress that he has suffered as a result of

Defendant's actions severely delayed his pursuing training and then

employment to work one-on-one with autistic children;

vii.   awarding Plaintiff specific damages for the insurance co-pays that he has

paid for medical treatment and medication that he received for the

physical, emotional, and mental distress that he has suffered as a result of

Defendants' actions;

viii.  awarding Plaintiff punitive damages in an amount to be determined at

trial;

ix.    awarding Plaintiff the reasonable costs and disbursements of this action; and

x.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments for each of the Fifteenth and Sixteenth Causes of Action against Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber, jointly and severally:**

i.    declaring the acts and conduct complained of herein in violation of Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

ii.    enjoining and permanently restraining these violations and directing Defendant Burnett, Brown, and Erber to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated;

iii.    enjoining Defendant Burnett, Brown, and Erber from committing or allowing any further due process violations against Plaintiff;

iv.    ordering Defendants Burnett, Brown, and Erber, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, and mental anguish suffered by Plaintiff;

v.    awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring of 2006;

33

vi.   ordering Defendants to reinstate the sick days that Plaintiff used for the medical leave of absence that he took in the Spring of 2006;

vii.   awarding Plaintiff specific damages for the wages that he has lost since early 2005 because the distress that he has suffered as a result of Defendants' actions severely delayed his pursuing training and then employment to work one-on-one with autistic children;

viii.   awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he received for the physical, emotional, and mental distress that he has suffered as a result of Defendants' actions;

ix.   awarding Plaintiff punitive damages in an amount to be determined at trial;

x.   awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action; and

xi.   granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.


Dated:  Brooklyn, New York
        June 10, 2008

OFODILE & ASSOCIATES, P.C.
Attorneys for Plaintiff Joseph Fierro

By: _____

Anthony C. Ofodile, Esq. (AO-8295)
498 Atlantic Avenue
Brooklyn, New York 11217
Tel. No.: (718) 852-8300

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK : EXECUTIVE DEPARTMENT

| | |
|---|---|
| STATE DIVISION OF HUMAN RIGHTS<br>on the Complaint of<br><br>JOSEPH FIERRO<br>                           Complainant<br>            v.<br><br>CITY OF NEW YORK, DEPARTMENT OF<br>EDUCATION<br>                           Respondent | VERIFIED COMPLAINT<br>Pursuant to Executive<br>Law, Article 15<br><br>Case No.<br>**10110363** |

Federal Charge No. 16GA601893

    I, Joseph Fierro, residing at 4009 Seagate Avenue, Brooklyn, NY, 11224, charge the above named respondent, whose address is 52 Chambers Street, Room 308, New York, NY, 10007 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of disability, national origin, creed, sex, sexual orientation, race/color, opposed discrimination/retaliation.

    Date most recent or continuing discrimination took place is 1/3/2006.

    The particulars are:

    1.   I am a White male of Italian descent. I have a disability in reading and writing.  I was perceived to be a homosexual.  I opposed discrimination.  Because of this, I have been subject to unlawful discriminatory actions.

    2.   From 2002 until the summer of 2005 I worked as an Assistant Principal at P12X, Lewis and Clark High School in the Bronx, N.Y.  The principal of the school was Ronna Bleadon.

    3.   During the last six months or so about my employment Ronna Bleadon made discriminatory, derogatory and abusive remarks towards me.

    4.   Ronna Bleadon cursed at me in front of staff and students.  She directed me to do manual labor.

    5.   Ronna Bleadon made sexual overtures towards me including but not limited to wanting me to stay over her house, calling me after she left for the day and asking me if I wanted her to keep

Complaint
SDHR Case No. 10110363
Joseph Fierro v. City Of New York, Department Of Education

me company and telling me that I had nice legs.  I told her that she was making me feel uncomfortable.

6.    When I did not respond to Ronna Bleadon's she took action by taking away sick days from me, attempting to take vacation days away from me.  She questioned my sexuality saying that she talked about me with some else and she was curious about whether I was a homosexual.

7.    Ronna Bleadon made derogatory remarks about Italians. She made references to my being associated with the Mafia.  She asked if it was true what they say about Italians as to sexual prowess.

8.    Ronna Bleadon made offensive comments about my Catholic faith.  I wear a crucifix and she asked what was on top of the crucifix.  I explained that the letters meant "king of the Jews."  She, a Jewish person, said "you don't really think he was King of the Jews?"  I was offended and made to feel uncomfortable by her comments.

9.    Ronna Bleadon was aware of my disability and made derogatory references to my condition by referring to me as brain dead.

10.   In the summer of 2005 I made internal complaints about Bleadon's conduct to Sharon Burnett, Superintendent of Local Instruction.  She said she was going to get me out of there. Later when I encountered the Superintendent of District 75, Susan Eber, she told me that she will get me out of there. However, I do not know whether any investigation was conducted about my charges.

11.   On September 30, 2005, I was transferred to K753, School for Career and Development in Brooklyn, N.Y.  I was an Assistant Principal and Ketler Louissant, a Black Haitian, was the principal.

12.   Louissant and I had discussions about what I believed to be abuse of the children at the school.  The children are mostly Hispanic and Black.  Louissant would tell me he'd take care of the situation.  During our discussions he'd say he is a Black man in the system and who knows I could be taking his job.

13.   On December 11, 2005, I put my concerns in writing in an email to Louissant.  I outlined the abuse and lack of action that I was aware of.  Louissant was extremely upset about the

Complaint
SDHR Case No. 10110363
Joseph Fierro v. City Of New York, Department Of Education

email.  On December 14, 2005, Louissant told me he was taken
back by my email and that he feels as though I was trying to
take him down.

14.  On December 19, 2005, I was directed to report to the
District office.  I was told by Bonnie Brown, Deputy
Superintendent, that I had communication problems with my
principals.  I was told that I was not to report to a school and
would just sit in an office at the District.

15.  On January 3, 2006, I met with Bonnie Brown and Susan
Erber.  Erber told me "I don't know who your godfather is but he
gave you wrong advice on writing this email.  They brought up
P12X and said that I had similar communication problems with the
principal.  I was threatened with termination of my position as
an Assistant Principal and threatened with demotion.

16.  I believe respondent has treated me in this manner
because of my race, national origin, disability, perceived
sexuality, religion and that my employment is being threatened
because I opposed discrimination.


Based on the foregoing, I charge respondent with an unlawful
discriminatory practice relating to employment because of
disability, national origin, creed, sex, sexual orientation,
race/color, opposed discrimination/retaliation, in violation of
the New York State Human Rights Law (Executive Law, Article 15),
Section 296.

I also charge the above-named respondent with violating Title
VII of the Civil Rights Act of 1964, as amended (covers race,
color, creed, national origin, sex relating to employment).  I
also charge the above-named respondent with violating the
Americans with Disabilities Act (ADA) (covers disability
relating to employment).  I hereby authorize SDHR to accept this
verified complaint on behalf of the U.S. Equal Employment
Opportunity Commission (EEOC) subject to the statutory
limitations contained in the aforementioned law(s).

Complaint
SDHR Case No. 10110363
Joseph Fierro v. City Of New York, Department Of Education

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

_____
Joseph Fierro

STATE OF NEW YORK )
                 )  SS:
COUNTY OF        )

Joseph Fierro, being duly sworn, deposes and says: that he/she is the complainant herein; that he/she has read (or had read to him or her) the foregoing complaint and knows the content thereof; that the same is true of his/her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he/she believes the same to be true.

_____
Joseph Fierro

Subscribed and sworn to
before me this      day
of          , 20

_____
Signature of Notary Public

**OFODILE & ASSOCIATES, P.C.**
Attorneys-At-Law
498 Atlantic Avenue
Brooklyn, New York 11217
Phone-718-852-8300 Fax. 718-852-7361

July 30, 2007

**VIA FACSIMILE**
Stuart R. Palatnick
New York State Division of Human Rights
Office of Sexual Harassment Issues
55 Hanson Place, Room 900
Brooklyn, New York 11217
Fax No. 718-722-4525

      Re:    Joseph Fierro v. The City of New York, et al.
             Case No.: 10110363

Dear Mr. Palatnick:

      I represent the Charging party Joseph Fierro in the above referenced case. Enclosed is my Notice of Appearance.

      Pursuant to our telephone conversation of earlier today, I write to request that the Division of Human Rights administratively close the above referenced case and nullify Mr. Fierro's election of remedies in this case as Mr. Fierro, after retaining and consulting with Counsel, has decided to file a case direct in State Supreme Court regarding the same charges.

      Please forward to the undersigned a letter when this matter is closed for administrative convenience and also indicate that  the Charging party is now free to file his case in Court.

      If you have any questions, please do not hesitate to contact the undersigned and thank you for your consideration of this matter.

                  Very truly yours,

                  Anthony C. Ofodile, Esq.
                  Attorney for Joseph Fierro

cc.:    Joseph Fierro
       4009 Seagate Avenue, Apt. 2
       Brooklyn, New York 11224

New York State
Division of Human Rights

------------------------------------------------------x

JOSEPH FIERRO,

                                             Case No. 10110363

         Plaintiff,

      -against-

                                           **NOTICE OF APPEARANCE**

CITY OF NEW YORK, DEPARTMENT
EUDCATION AND RONNA BLEADON
AS AIDER & ABETTOR,

         Defendants.

------------------------------------------------------x

Dear Sir/Madam:

      PLEASE TAKE NOTICE that, Joseph Fierro, the Charging party/plaintiff in the above

referenced case who had hitherto appeared herein *pro se*, has retained the undersigned attorneys

to represent him in this case and requests that henceforth all communications relating

to/concerning this matter be addressed to/through the undersigned attorneys.


Dated: Brooklyn, New York
       July 30, 2007

                               OFODILE & ASSOCIATES, P.C.


                               By_____
                               Anthony C. Ofodile, Esq.
                               Attorneys for Joseph Fierro
                               498 Atlantic Avenue
                               Brooklyn, New York 11217
                               718 852 8300

cc.:   Joseph Fierro
      4009 Seagate Avenue, Apt. 2
      Brooklyn, New York 11224

# OFODILE & ASSOCIATES, P.C.
### *ATTORNEYS-AT-LAW*

Anthony C. Ofodile, Esq.
Kathy A. Polias, Esq.

498 Atlantic Ave.
Brooklyn, NY 11217

Phone:    (718) 852-8300
Facsimile: (718) 852-7361

March 11, 2008

Director
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112

Re:    *Fierro v. City of New York*
Federal/EEOC Charge No.:  16GA601893_____

Dear Director:

   We represent Complainant Joseph Fierro in the above-referenced Federal/EEOC complaint.

   Complainant Joseph Fierro would like to request from the EEOC a Right to Sue Letter, as more than six months have elapsed since Mr. Fierro filed a complaint with the New York State Division of Human Rights, which was dually filed with the EEOC and assigned Federal Charge No. 16GA601893. Plaintiff's complaint was for discrimination on the basis of disability, national origin, creed, sex, sexual orientation, and race/color and retaliation for opposing discrimination.

   Please send a Right to Sue letter to our office for Federal Charge No.16GA601893 at your earliest convenience. Thank you for your time and attention to these matters.

Sincerely,

*Kathy Polias*

Kathy A. Polias, Esq.

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  Joseph Fierro
4009 Seagate Avenue, Apt. 2
Brooklyn, NY 11224

From:  New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

Telephone No.

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2006-01893 | Holly M. Woodyard, Investigator | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐  While reasonable efforts were made to locate you, we were not able to do so.

☐  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒  Other (briefly state)    **Charging Party to Pursue Matter in Court.**

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Spencer H. Lewis, Jr.,_
**Director**

9/17/07
(Date Mailed)

Enclosures(s)

cc:    **CITY OF NEW YORK, DEPT OF EDUCATION**
52 Chambers Street, Room 308
New York, NY 10007
Attn: Human Resource Director

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300



02 1A
0004601382      MAR 19 2008
MAILED FROM ZIP CODE 10004

PITNEY BOWES
$ 00.41⁰

UNITED STATES POSTAGE

Ofodile & Associates PC.
498 Atlantic Ave.
Brooklyn, NY. 11217
Attn: Kathy A. Polias, Esq.

11217181813  0015