UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOSEPH FIERRO,

                                              Plaintiff,          **NOTICE OF**
                                                                  **APPEAL**
                    -against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, RONNA BLEADON,                           07 Civ. 11214 (SAS)
former Principal, P12X, Special Education District 75, New
York City Department of Education, in her individual and
official capacities, SHARON BURNETT, former Local
Instructional Superintendent within Special Education
District 75, New York City Department of Education, in her
individual and official capacities, DR. SUSAN ERBER,
former Superintendent, Special Education District 75,
Citywide Programs, New York City Department of
Education, in her individual and official capacities, and
BONNIE BROWN, former Deputy Superintendent (and
current Superintendent), Special Education District 75,
Citywide Programs, New York City Department of
Education, in her individual and official capacities,

                                            Defendants.
-------------------------------------------------------------------x



　　　　**PLEASE TAKE NOTICE** that defendant hereby appeals to the United States Court

of Appeals for the Second Circuit, from the Opinion and Order (one paper) of the Hon. Shira A.

Scheindlin, herein dated July 30, 2008, and entered on or about July 30, 2008.  This appeal is taken

from each and every part of said Opinion and Order (one paper) as well as from the whole thereof.

Dated:      New York, New York
            August 11, 2008

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                            City of New York
                                        Attorney for Defendants
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 788-1010

                            By:         _____
                                        LEONARD KOERNER
                                        Chief, Appeals Division

TO:     KATHY A. POLIAS, ESQ.
        OFODILE & ASSOCIATES, P.C.
        Attorneys for Plaintiff
        498 Atlantic Ave
        Brooklyn, New York 11217
        (718) 852-8300

        CLERK
        Southern District

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JOSEPH FIERRO,                                    :

                          Plaintiff,              :

                                                  :

          - against -                             :

                                                  :

THE CITY OF NEW YORK, NEW YORK CITY               :
DEPARTMENT OF EDUCATION, RONNA                    :
BLEADON, former Principal, P12X, Special          :
Education District 75, New York City Department    :
of Education, in her individual and official      : **OPINION AND ORDER**
capacities, SHARON BURNETT, former Local          :
Instructional Superintendent within Special        :    07 Civ. 11214 (SAS)
Education District 75, New York City Department    :
of Education, in her individual and official      :
capacities, DR. SUSAN ERBER, former               :
Superintendent, Special Education District 75,    :
Citywide Programs, New York City Department        :
of Education, in her individual and official      :
capacities, and BONNIE BROWN, former Deputy        :
Superintendent (and current Superintendent),      :
Special Education District 75, Citywide Programs,  :
New York City Department of Education, in her      :
individual and official capacities,               :

                          Defendants.             :

-----------------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

          Joseph Fierro brings this action against the City of New York, the

New York City Department of Education ("DOE"), and certain individuals for

1

claims arising under the New York City Administrative Code and section 1983 of

title 42 of the United States Code ("section 1983").  He alleges that he was

subjected to hostile work environment sexual harassment, retaliation, and the

violation of his First Amendment right to free speech while employed as an

assistant principal for Public School 12X ("P12X") of DOE Special Education

District 75 ("District 75").  Defendants have moved to dismiss plaintiff's

complaint in its entirety.  For the reasons that follow, defendants' motion is

granted in part and denied in part.

## II.    BACKGROUND

### A.    Facts[1]

Plaintiff, a resident of New York, was employed as an assistant

principal for P12X beginning in 2002.[2]  P12X is comprised of approximately six

school sites located in the Bronx, New York, with its administration primarily

based at Lewis & Clark High School ("Lewis & Clark").[3]  Plaintiff, other assistant

principals for P12X, and the Principal – defendant Ronna Bleadon – all had

---

[1]    The following factual allegations, taken from the Second Amended
Complaint ("Compl."), are accepted as true for purposes of this motion.

[2]    *See* Compl. ¶ 16.

[3]    *See id.*

2

offices at Lewis & Clark.[4]

     Plaintiff alleges that from the start of his employment, Bleadon made inappropriate comments about how handsome he looked in a suit and how her husband was jealous of plaintiff because she constantly told him what a good job plaintiff was doing.[5] During the first two years of his employment, Bleadon also made comments about plaintiff's physical appearance in the presence of co-workers.[6] For example, when he wore shorts to work during the summer months Bleadon commented that plaintiff had great legs and asked whether he had been working out.[7] Bleadon also told plaintiff intimate details about her personal life, sharing her past experiences with an ex-husband.[8]

     In or about the fall of 2004, Bleadon repeatedly suggested that plaintiff visit her home while her husband was on a business trip so that plaintiff could "keep her company."[9] Bleadon directed these comments at plaintiff while at

---

[4]     *See id.*

[5]     *See id.* ¶ 17.

[6]     *See id.* ¶ 18.

[7]     *See id.*

[8]     *See id.*

[9]     *Id.* ¶ 19.

work, as well as during phone calls that she initiated after work-hours.[10] Around that same time, Bleadon would "beckon [p]laintiff to her office by saying 'Come see mommy' or 'Come to Mama Bleadon' in front of other [a]ssistant [p]rincipals."[11] According to plaintiff, Bleadon's comments and advances made him feel very uncomfortable and awkward.[12]

Plaintiff alleges that he exercised his First Amendment right to free speech in or about the fall of 2004 when he refused "to participate in or facilitate [] Bleadon's campaigns to ruin the careers" of two teachers whom Bleadon did not like.[13] Plaintiff witnessed one of the two teachers – Ms. Grey – intercede in an altercation between two students.[14] Bleadon directed plaintiff to lie and state that he had seen Ms. Grey participate in the fight, but plaintiff refused to do so.[15] Bleadon directed plaintiff to enter the second targeted teacher's classroom – that of Mr. Simon – and "find things for which the administration could give [that teacher] a 'U' (Unsatisfactory) rating. Plaintiff observed [that teacher's]

---

[10]    *See id.*

[11]    *Id.* ¶ 21.

[12]    *See id.* ¶¶ 17, 19.

[13]    *Id.* ¶ 22.

[14]    *See id.*

[15]    *See id.*

4

classroom and did not find anything that warranted a "U" rating. He told Bleadon same."[16]

As punishment for resisting her sexual advances and/or exercising his First Amendment rights, plaintiff alleges that Bleadon retaliated against him by:

> (1) using profane language towards [p]laintiff in front of staff and students and making abusive and derogatory remarks to him; (2) taking away vacation days from him; (3) directing him to do manual labor and other tasks outside his job description; (4) making derogatory remarks about Italian people . . . (5) taunting [p]laintiff over his learning disabilities . . . (6) harshly criticizing and ostracizing [p]laintiff . . . (7) questioning [his] sexuality and speaking to staff members about whether [he] was gay; (8) threatening [him] that [Bleadon] would transfer him to West Side High School . . . and he wouldn't have all the comforts that he had at Lewis & Clark; (9) actually transferring him to West Side High School; and (10) falsifying lateness[] on [p]laintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.[17]

In the middle of the spring semester of 2005, Bleadon transferred plaintiff against his will to West Side High School ("West Side"), another P12X school site.[18] Due to this transfer, plaintiff no longer had his own office, parking space, computer, and phone.[19] He was separated from the other assistant

---

[16]    *Id.* ¶ 23.

[17]    *Id.* ¶ 24.

[18]    *See id.* ¶¶ 24-25.

[19]    *See id.* ¶ 25.

principals of P12X who all remained at Lewis & Clark.[20]  Moreover, plaintiff had

to travel a greater distance from his home to West Side than to Lewis & Clark.[21]

Following his transfer, Bleadon repeatedly called plaintiff at West Side to ask him

how he liked the transfer, commenting to plaintiff that he no longer had the "same

comforts that you had here."[22]  When plaintiff responded that he did not

understand why he was transferred and no longer had his own office, Bleadon

responded, "Well, you think about it."[23]  When plaintiff returned to Lewis & Clark

for routine meetings with Bleadon, she would ask him whether he missed her or

whether he was "ready to behave."[24]

       In or about August 2005, plaintiff complained to defendant Sharon

Burnett, a Local Instructional Superintendent in District 75 who supervised

P12X.[25]  Plaintiff informed Burnett that he had been sexually harassed by Bleadon

and felt that he had been retaliated against for rejecting her advances.[26]  Burnett

---

[20]    *See id.*

[21]    *See id.*

[22]    *Id.* ¶ 26.

[23]    *Id.*

[24]    *Id.*

[25]    *See id.* ¶ 27.

[26]    *See id.*

spoke with defendants Bonnie Brown and Dr. Susan Erber, Deputy Superintendent

and Superintendent of District 75, respectively, regarding plaintiff's complaints.[27]

Burnett then informed plaintiff that he was being transferred to P753X – a District

75 high school located in Brooklyn that was known to be one of the most

dangerous schools in New York state.[28]

Plaintiff protested that he had previously been stabbed twice during

earlier placements at dangerous schools and did not want to be transferred.[29]

Moreover, plaintiff only had two more years until he was eligible for tenure at

P12X and a transfer would significantly disrupt his progress.  Nevertheless,

plaintiff was transferred to P753X "in retaliation for complaining about []

Bleadon's sexual harassment of him and about her retaliation against him for

rebuffing her advances."[30]

As a result of Bleadon's sexual harassment and defendants'

retaliatory acts, plaintiff alleges that he suffered mental and physical distress, and

he incurred costs associated with medical visits and medication.[31]  Additionally, he

---

[27]     *See id.*

[28]     *See id.*

[29]     *See id.*

[30]     *Id.*

[31]     *See id.* ¶ 28.

took a medical leave from work in the spring of 2006, and lost twenty days worth

of wages.[32] Plaintiff further alleges that, due to his distress, he was unable to

undergo training in early 2005 to work with autistic children. This delay

prevented him from obtaining employment in this field until very recently.[33]

Plaintiff alleges that in retaliation for the filing of the instant suit the

City of New York, the DOE, and Brown have pressured the principal of District

75 – his current supervisor – to terminate him.[34] Specifically, the principal

advised plaintiff that he did not think that plaintiff would be retained as a teacher

for the next academic year, despite the fact that two teachers with less seniority

were not so advised.[35]

## B.   Procedural History

Plaintiff filed suit in the Supreme Court of the State of New York.

That suit was subsequently removed to this Court by the City of New York on the

ground that federal question jurisdiction exists over the section 1983 claims

pursuant to 28 U.S.C. § 1331. Defendants now move to dismiss the Complaint in

its entirety.

---

[32]    *See id.*

[33]    *See id.* ¶ 29.

[34]    *See id.* ¶ 30.

[35]    *See id.*

8

## III.   APPLICABLE LAW

### A.   Rule 12(b)(6) – Motion to Dismiss

When deciding a defendant's motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6), the court must "accept as true all of the factual

allegations contained in the complaint"[36] and "draw all inferences in the light most

favorable to the non-moving party . . . ."[37]  Nevertheless, the court need not accord

"[l]egal conclusions, deductions or opinions couched as factual allegations . . . a

presumption of truthfulness."[38]

In deciding a motion to dismiss, the court is not limited to the face of

the complaint, but "may [also] consider any written instrument attached to the

complaint, statements or documents incorporated into the complaint by reference,

. . . and documents possessed by or known to the plaintiff and upon which it relied

in bringing the suit."[39]  However, "before materials outside the record may become

the basis for a dismissal . . . it must be clear on the record that no dispute exists

---

[36]     *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1975 (2007)
(quotation marks omitted).  *Accord In re NYSE Specialists Sec. Litig.*, 503 F.3d 89,
95 (2d Cir. 2007).

[37]     *In re NYSE Specialists*, 503 F.3d at 95.

[38]     *Id.* (quotation marks omitted).

[39]     *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

regarding the authenticity or accuracy of the document."[40]

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[41]  To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[42]  Although the complaint need not provide "detailed factual allegations,"[43] it must "amplify a claim with some factual allegations . . . to render the claim *plausible*."[44]  The standard is no longer that a complaint can be dismissed only if there is "no set of facts" that plaintiff could prove "which would entitle him to relief."[45]  Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations

---

[40]     *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[41]     *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[42]     *See Bell Atl.*, 127 S. Ct. at 1970.

[43]     *Id.* at 1964. *Accord ATSI*, 493 F.3d at 98 n.2 (applying the standard of plausibility outside *Bell Atlantic*'s anti-trust context).

[44]     *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

[45]     *Bell Atl.*, 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45, 46 (1957)). *Accord id.* ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.").

sufficient 'to raise a right to relief above the speculative level.'"[46]

**B.      Retaliation in Violation of First Amendment Pursuant to Section 1983**

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[47]  In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[48]

In order to establish a retaliation claim in violation of the First Amendment right to free speech, a plaintiff must show *first*, that the speech at issue was protected; *second*, that he suffered an adverse employment action; and *third*, that there exists a causal connection between the speech and the adverse employment action.[49]  With respect to the first prong, the Supreme Court has made clear that while public employees do not surrender all of their First Amendment

---

[46]      *ATSI*, 493 F.3d at 98 (quoting *Bell Atl.*, 127 S. Ct. at 1965).

[47]      *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

[48]      *See Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004).

[49]      *See Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir. 2008) (citing *Cioffi v. Averill Park Cent. School Dist.*, 444 F.3d 158, 162 (2d Cir. 2006)).

11

rights by reason of their employment,"[50] their speech is protected only to the extent the employee is speaking as a "citizen addressing matters of public concern."[51]

There are "two inquiries to guide interpretation of the constitutional protections accorded to public employee speech."[52] The first inquiry requires courts to determine whether the employee spoke as a citizen on a matter of public concern.[53] In *Garcetti v. Ceballos* ("*Garcetti*"), the Supreme Court clarified that when a public employee makes statements pursuant to his official duties, he does not speak as a citizen for First Amendment purposes, and "the Constitution does not insulate [his] communications from employer discipline" based on the employer's reaction to the speech.[54] Thus, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."[55] In so holding, the Supreme Court rejected the "notion that the First Amendment shields

---

[50]   *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

[51]   *Id.* (citations omitted).

[52]   *Id.* at 418.

[53]   *See id.*

[54]   *Id.* at 421.

[55]   *Id.* at 421-22.

12

from discipline the expressions employees make pursuant to their professional duties."[56]

"Employee expression is not a matter of public concern when it 'cannot be fairly considered as relating to any matter of political, social, or other concern to the community.'"[57] "'[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision.'"[58] "In making its determination, the court should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."[59]

If the employee spoke as a citizen on a matter of public concern, a First Amendment claim may – but does not automatically – arise. The next question is "whether the relevant government entity had an adequate justification

---

[56]    *Id.* at 426 (stating that "[o]ur precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job").

[57]    *Singh*, 524 F.3d at 372 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

[58]    *Id.* (quoting *Connick*, 461 U.S. at 147).

[59]    *Hanig v. Yorktown Cent. School Dist.*, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) (citation omitted).

for treating the employee differently from any other member of the general

public."[60]  The Supreme Court has noted that this consideration reflects that while

a "government entity has broader discretion to restrict speech when it acts in its

role as employer, [] the restrictions it imposes must be directed at speech that has

some potential to affect the entity's operations."[61]

## C.   Hostile Work Environment Sexual Harassment and Retaliation Under New York City Administrative Code

### 1.   Statute of Limitations

Claims brought for discrimination, hostile work environment sexual

harassment, and retaliation under the New York City Human Rights Law (the

"CHRL") of the New York City Administrative Code[62] are ordinarily governed by

a three-year statute of limitations.[63]  However, section 3813 of the New York

Education Law ("section 3813") "imposes a one-year statute of limitations on any

cause of action arising against a school district or board of education[,]"[64] as well

---

[60]     *Garcetti*, 547 U.S. at 418 (citing *Pickering v. Board of Ed. of Township High School Dist. 205, Will County*, 391 U.S. 563, 568 (1968)).

[61]     *Id.*

[62]     N.Y.C. Admin. Code § 8-101, *et seq.*

[63]     *See Alimo v. Off-Track Betting Corp.*, 258 A.D.2d 306, 306-07 (1st Dep't 1999).

[64]     *Ximines v. George Wingate High School*, No. 05 CV 1214, 2006 WL 2086483, at *10 (E.D.N.Y. July 25, 2006), *rev'd on other grounds* 516 F.3d 156

as any officer of those entities.[65] Thus, "[d]espite any provision for a longer statute of limitations, the one-year limitation prescribed in [section 3813] should govern discrimination claims against a school district[,]" board of education, or officer thereof.[66]

### 2.   Notice of Claim

Section 3813(1) provides, in pertinent part:

> No action or special proceeding, for any cause whatever . . . against the district or any such school shall be prosecuted or maintained against any school district, board of education . . . or any officer of a school district, board of education . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.[67]

---

(2d Cir. 2008). *See* N.Y. Educ. Law § 3813(2-b) ("Except as provided in subdivision two of this section and *notwithstanding any other provision of law providing a longer period of time in which to commence an action* or special proceeding, no action . . . shall be commenced against any entity specified in subdivision one of this section more than one year after the cause of action arose . . . .) (emphasis added).

[65]   *See* N.Y. Educ. Law § 3813(1), (2-b).

[66]   *Amorosi v. South Colonie Indep. School Dist.*, 9 N.Y.3d 367, 372 (2007).

[67]   N.Y. Educ. Law § 3813(1).

"Thus, a failure to present a claim [to the proper party] within ninety days of its accrual is a fatal defect."[68] While actions that seek to vindicate the public interest are excepted from this requirement, it is well-settled that section 3813(1) applies to actions that seek the enforcement of private rights.[69]

Under section 3813(2-a), courts may exercise their discretion to extend the time to serve a notice of claim upon reviewing the facts and circumstances.[70] Courts in this district have held that a plaintiff must submit a formal application to the court for leave to file a late notice of claim, and have dismissed claims in the absence of such an application.[71] In all cases, however, the New York Education Law makes clear that "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant against any

---

[68] *Bloom v. New York City Bd. of Educ.*, No. 00 Civ. 2728, 2003 WL 1740528, at *13 (S.D.N.Y. Apr. 2, 2003). *Accord Kaselaan & D'Angelo Assocs., Inc. v. City of New York*, No. 98 Civ. 7497, 1999 WL 1067857, at *2 (S.D.N.Y. Nov. 23, 1999) ("Notice of claim requirements are strictly enforced, and failure to comply ordinarily results in dismissal.").

[69] *See Bloom*, 2003 WL 1740528, at *13.

[70] N.Y. Educ. Law § 3812(2-a).

[71] *See, e.g., Adler v. South Orangetown Cent. School Dist.*, No. 05 Civ. 4835, 2008 WL 190585, at *16 (S.D.N.Y. Jan. 17, 2008) (dismissing plaintiff's state law claims where plaintiff failed to timely file a notice of claim pursuant to section 3813 and had not requested leave to serve a late notice of claim).

district or any such school."[72]  "Moreover, courts have excused plaintiffs from the formal notice of claim requirement where defendants have received clear notice of the nature of the claims, and time when, the place where and the manner in which the claims arose."[73]

## IV.   DISCUSSION

### A.   Retaliation in Violation of First Amendment Pursuant to Section 1983

#### 1.   Plaintiff Engaged in Protected Speech

The crux of the parties' dispute on plaintiff's First Amendment retaliation claims center on whether plaintiff engaged in protected speech by speaking as a citizen on a matter of public concern.  According to the Complaint, plaintiff exercised his rights under the First Amendment by "refusing to participate in or facilitate [] Bleadon's campaigns to ruin the careers of two very good teachers whom Bleadon did not like."[74]  Plaintiff alleges that because participation in Bleadon's "efforts to blackball these two teachers was not part of [his] job description or job duties," he was "exercising his First Amendment freedoms as a

---

[72]   *Id.*

[73]   *Kaselaan*, 1999 WL 1067858, at *2 (quotation marks omitted).

[74]   Compl. ¶ 22. *Accord id.* ¶¶ 42, 45.

citizen when he refused to participate."[75]

Defendants move to dismiss the First Amendment retaliation claims on the grounds that plaintiff's "speech" does not constitute a matter of public concern,[76] and the speech was made pursuant to his official duties as an assistant principal rather than as a citizen.[77] Defendants contend that because plaintiff's speech constituted "discourse" with Bleadon on tasks within the scope of his duties as an assistant principal – *i.e.*, the "preparation of an incident report and teacher evaluation" – his First Amendment claims fail.[78]

The Court must evaluate whether plaintiff's refusals were made as an assistant principal fulfilling a professional responsibility or simply as a citizen.[79] Plaintiff alleges that it was within the scope of his duties to report to Bleadon and to work under her supervision.[80] He further alleges that *first*, his refusal to "lie and

---

[75]    *Id.* ¶ 22.

[76]    *See* Defendants' Memorandum of Law of Law in Support of Their Motion to Dismiss ("Def. Mem.") at 6-7. *Accord* Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss ("Def. Reply") at 5-7.

[77]    *See* Def. Reply at 3-5.

[78]    *Id.* at 4.

[79]    *See Garcetti*, 547 U.S. at 421.

[80]    *See* Compl. ¶ 16.

say that [a teacher named] Ms. Grey had held the head of one of the girls [in a school fight] and told the other girl to punch her[,]"[81] and *second*, his speech in response to Bleadon's request that he find items warranting an "Unsatisfactory" rating for Mr. Simon, another teacher at the school, were made in his capacity as a citizen rather than as an assistant principal.[82]

*Garcetti* and its progeny dictate that speech made by a public employee pursuant to his professional duties does not fall under the purview of the First Amendment because it is not spoken as a private citizen.  For example, the plaintiff in *Garcetti*, a deputy district attorney, brought suit against his employer for First Amendment retaliation, claiming that he had been retaliated against after drafting a memorandum on the disposition of a pending case.  In holding that his speech – *i.e.*, the memorandum – was not protected under the First Amendment, the Supreme Court pointed out that the plaintiff "wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do."[83] Exercising similar reasoning, courts in the Second Circuit have dismissed First Amendment retaliation claims where plaintiffs have alleged that their work

---

[81]   *Id.* ¶ 22.

[82]   *See id.*

[83]   *Garcetti*, 547 U.S. at 421.

product and their communications relating to that work product constituted

protected speech.[84]

      This case is patently distinguishable from *Garcetti*. Here, plaintiff

did not engage in speech pursuant to his official duties as an assistant principal

when he refused Bleadon's instructions to commit blatantly wrongful acts. The

question of whether speech stemming from a supervisor's instruction to a

subordinate to commit a wrongful – perhaps even criminal – act falls under

*Garcetti* is one that has not yet been addressed by the Second Circuit. Indeed, I

have not found any case law with facts analogous to those presented here. I am

deeply troubled, however, by the proposition advanced by defendants that a claim

based on a public employee's refusal to engage in serious misconduct at the

direction of his supervisor is barred by *Garcetti*.

      When a public employee resists a supervisor's order to commit a

---

[84]    *See, e.g., Ruotolo v. City of New York*, No. 03 Civ. 5045, 2006 WL 2033662, at *3-6 (S.D.N.Y. July 19, 2006) (dismissing First Amendment retaliation claims where plaintiff's alleged speech consisted of a report prepared pursuant to his professional duties as a police sergeant as well as discussions with union attorneys regarding the report), *aff'd*, 514 F.3d 184 (2d Cir. 2008). *See also Healy v. City of New York*, No. 04 Civ. 7344, 2006 WL 3457702, at *5 (S.D.N.Y. Nov. 22, 2006) (granting defendant's motion for summary judgment on plaintiff's First Amendment retaliation claim where plaintiff stated in both his complaint and deposittion testimony that his speech – an inventory check and subsequent report – *was made as part of his duties as defendant's employee*), *aff'd*, No. 06-5865-CV, 2008 WL 2599154, at *1 (2d Cir. June 30, 2008).

wrongful (perhaps criminal) act, that refusal cannot constitute insubordination that can or should be subject to employer discipline based on the employer's reaction to the refusal. In *Garcetti*, the Supreme Court struck a balance between an individual's right to free speech under the First Amendment and a public employer's need for a "significant degree of control over their employee's words and actions" because "without it, there would be little chance for the efficient provision of public services."[85] Where an employer – or as here, a supervisor – wrongfully directs its employee to undertake serious misconduct, it cannot be said that it is exercising its legitimate need for control over its employee. As such, the balance sought and struck by the *Garcetti* Court simply does not apply.

Moreover, the *Garcetti* Court made clear that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."[86] Here, however, plaintiff's right to refuse to carry out wrongful acts falls squarely within those rights enjoyed by private citizens. Plaintiff has an inviolable right to say "no" when confronted with an instruction to commit acts that were not only clearly outside the scope of his duties but more importantly, may also have been

---

[85]    *Garcetti*, 547 U.S. at 418 (citation omitted).

[86]    *Id.* at 421-22.

21

improper or even unlawful.  Failing to protect his right to refuse to perpetrate or participate in the lodging of false allegations and the falsifying of records would be an inappropriate expansion of *Garcetti*.

Therefore, plaintiff's alleged refusal to lodge false accusations against a teacher regarding her participation in a school fight was speech made in plaintiff's capacity as a citizen.  Plaintiff's speech informing Bleadon that he did not find anything in another teacher's classroom warranting an "Unsatisfactory" rating, as directed by Bleadon, presents a more difficult scenario.  Plaintiff alleges that he refused to participate in or facilitate Bleadon's "campaign to ruin the careers of two very good teachers whom Bleadon did not like."[87]  However, plaintiff subsequently alleges in greater detail that, with respect to the second teacher, "Bleadon instructed [p]laintiff to go into [that teacher's] classroom and find things for which the administration could give [the teacher] a 'U' (Unsatisfactory) rating."[88]  Plaintiff then alleges that he "observed [the teacher's] classroom and did not find anything that warranted a 'U' rating," and "told Bleadon same."[89]

---

[87]    Compl. ¶ 22.

[88]    *Id.* ¶ 23.

[89]    *Id.*

22

Unlike the allegation regarding the first teacher, plaintiff does not allege that he refused to carry out an unlawful direction. Rather, he alleges that he engaged in protected speech when he told Bleadon that he had not observed anything objectionable in the second teacher's classroom. Because it is not clear from the face of the Complaint what plaintiff's duties were as assistant principal and whether it was within the scope of his duties to observe this teacher's room, and because I draw all inferences in the light most favorable to plaintiff, I decline to dismiss plaintiff's claim stemming from his report to Bleadon on the second teacher as speech made pursuant to his professional duties.

Speaking as a citizen rather than merely as a public employee, plaintiff's refusals addressed a matter of public concern because it addressed serious misconduct on the part of the head of a public school. The conduct and character of teachers and principals at a public school – particularly one within a special education district – reasonably qualifies as a matter that concerns the community.[90]

While the fact that a statement is made at work and in private may

---

[90]   *Cf. Singh*, 524 F.3d at 372 (holding that plaintiff's speech did not address a matter of public concern because it related "only to internal employment policies" of the City of New York and primarily constituted speech on a personal grievance).

militate against a finding of public concern, it is not dispositive.[91]  Indeed, the

Supreme Court in *Garcetti* expressly noted that the fact that an employee engages

in speech "inside his office, rather than publicly" is not dispositive because

"[m]any citizens do much of their talking inside their respective workplaces[.]"[92]

As such, it would undermine the goal of "treating public employees like any

member of the general public to hold that all speech within the office is

automatically exposed to restriction."[93]  Here, although plaintiff engaged in speech

directed at his supervisor inside the school, that does not preclude the Court from

holding that he has sufficiently pled speech addressing a matter of public concern.

Additionally, plaintiff alleges that in refusing to lie about what he

observed during a school fight, he "told [] Bleadon not to turn to him for things

like that and that he was not going to lie and destroy this teacher's career."[94]  The

allegations do not suggest that plaintiff's speech was motivated by any personal

desire, or addressed a personal grievance.[95]  Rather, plaintiff's refusal to commit

---

[91]     *See De Los Santos v. City of New York*, 482 F. Supp. 2d 346, 353 (S.D.N.Y. 2007).

[92]     *Garcetti*, 547 U.S. at 420.

[93]     *Id.* at 420-21 (quotation marks omitted).

[94]     Compl. ¶ 22.

[95]     *See Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006) (holding that the speaker's motive is a factor to be considered when determining whether the

24

wrongful acts as directed by his supervisor was not made in the context of a strictly employer-employee dispute, but was spoken as a citizen rejecting the corrupt direction of a supervisor.

### 2. Plaintiff Suffered an Adverse Employment Action

Plaintiff has put forth sufficient facts to support his allegation that he suffered an adverse employment action. For purposes of a First Amendment retaliation claim, an employment action is adverse if it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ."[96] Plaintiff alleges that he suffered adverse employment actions when he was subjected to a hostile work environment via Bleadon's derogatory remarks related to, inter alia, his race and perceived sexuality.[97] Bleadon also took vacation days away from plaintiff, directed him to perform manual labor, and threatened plaintiff with transfer to a less desirable location.[98] These threats culminated in plaintiff's involuntary transfer in the fall of 2005 to West Side,

---

speech addressed a matter of public concern, but it is not dispositive).

[96] *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225-26 (2d Cir. 2006).

[97] *See* Compl. ¶ 24 (alleging that Bleadon commented to plaintiff that he was associated with the Mafia because he is Italian, taunted him over his learning disabilities and referred to him as "brain dead," and questioned him and staff members about his sexual orientation).

[98] *See id.*

where he no longer had his own office, parking spot, computer, and phone.[99]  West

Side was also farther from his home than Lewis & Clark.[100]

Plaintiff's transfer to a school where he was the sole P12X assistant

principal, where all of the other assistant principals remained at Lewis & Clark,

where he had access to substantially less resources, and which was farther from his

home all indicate that he suffered an adverse employment action.  Based on the

facts alleged and for purposes of this motion, plaintiff has sufficiently pled that his

transfer to West Side constituted an adverse employment action.

### 3.   Plaintiff Has Pled a Causal Connection Between His Speech and the Adverse Employment Action

Plaintiff has also alleged sufficient facts to support a causal

connection between his speech and the adverse employment action.  Plaintiff

alleges that he engaged in protected speech in the fall of 2004,[101] and was

subsequently subjected to a hostile work environment, culminating in his

involuntary transfer to West Side "in the middle of the Spring semester of

2005."[102]  The very brief passage of time between the speech and the employment

---

[99]     *See id.* ¶ 25.

[100]    *See id.* ¶ 25.

[101]    *See id.* ¶ 22.

[102]    *Id.* ¶ 24.

26

action provide an adequate basis for holding that plaintiff has sufficiently alleged a

causal connection.[103] Temporal proximity is strong circumstantial evidence of

improper intent.[104] While it is not the sole factor to be considered on this third

prong nor is it dispositive, it creates a strong inference of causation, particularly

where plaintiff does not allege that he engaged in numerous acts of speech over a

long period of time.[105]

### 2.   Bleadon Is Not Entitled to Qualified Immunity

The First Amendment retaliation claims are only brought against

---

[103]   *See Morey v. Somers Cent. School Dist.*, No. 06 Civ. 1877, 2007 WL 867203, at *12 (S.D.N.Y. Mar. 21, 2007) (noting that it would be "inappropriate" to dismiss plaintiff's First Amendment retaliation claim on a motion to dismiss when "[c]onsidering the temporal proximity and plaintiff's allegations of defendants' improper motive, plaintiff has alleged sufficient facts , that if proven, would establish a causal connection . . . .").

[104]   *See Anemone v. Metropolitan Transp. Auth.*, No. 05 Civ. 3170, 2008 WL 1956284, at *10 (S.D.N.Y. May 2, 2008) (citations omitted). *See also Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) ("In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action.  This court has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.") (quotation marks omitted).

[105]   *See McAllan v. Von Essen*, 517 F. Supp. 2d 672, 683 (S.D.N.Y. 2007).

Bleadon, who asserts a defense of qualified immunity.[106] While qualified immunity is an affirmative defense, the Second Circuit has stated that there is "no reason why even a traditional qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint."[107] As usual, the plaintiff is "entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."[108]

Qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[109] "Courts employ a two-part test in evaluating the merits of a qualified immunity defense: "(1) whether plaintiff has alleged that the defendant's conduct violated a constitutional right; and (2) whether it is objectively reasonable that the defendant believed that [s]he was not in violation of a clearly established constitutional

---

[106]   *See* Compl. ¶¶ 42-46. *See also* Plaintiff Joseph Fierro's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 6-7 (addressing only Bleadon's claim of entitlement to qualified immunity).

[107]   *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citations omitted).

[108]   *Id.*

[109]   *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (quotation marks omitted).

28

right."[110]

*First*, plaintiff has adequately alleged that Bleadon violated his constitutional right to free speech under the First Amendment by retaliating against him for his exercise of that speech. *Second*, drawing all inferences in plaintiff's favor, it is not objectively reasonable for Bleadon to have believed that her conduct did not violate plaintiff's clearly established constitutional right.

Defendants argue that "the contours of the First Amendment right cannot be considered to be clearly established in 2005, when the alleged retaliation occurred" because *Garcetti* "had not even been handed down at the time."[111] That argument is unpersuasive, however, because I have already held that speech made in refusing to commit a wrongful or unlawful act, even when directed by an employer, falls outside the scope of *Garcetti*. Defendants defeat their own argument by noting that the "preexisting law in this [c]ircuit [at the time of the alleged retaliation] . . . held that complaints about the internal employment conditions of plaintiff was unprotected by the First Amendment."[112] However,

---

[110]    *Chambers v. Wright*, No. 05 Civ. 9915, 2007 WL 4462181, at *4 (S.D.N.Y. Dec. 19, 2007) (citing *inter alia Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[111]    Def. Mem. at 9.

[112]    *Id.* (citing *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775 (2d Cir. 1991), *cert. denied*, 502 U.S. 1013 (1991)).

even under that standard, it would be objectively unreasonable for Bleadon to have believed that her direction to plaintiff to commit wrongful acts could constitute an "internal employment condition."

Moreover, because the nature and scope of plaintiff's job duties cannot be fully ascertained from the face of the Complaint and because I must accept his allegations as true, plaintiff may prove that Bleadon retaliated against him for speaking on matters of public concern beyond the scope of his official duties.[113] As a result, the motion to dismiss the First Amendment retaliation claims against Bleadon based on qualified immunity is denied.

## B.   Other Claims

### 1.   Claims Against City of New York

As an initial matter, the claims against the City of New York are dismissed. Courts in this circuit as well as the New York State courts have made clear that the City of New York and the DOE are separate legal entities.[114]

---

[113]   *See McLaughlin v. Pezzolla*, No. 06-CV-376, 2007 WL 676674, at *10 (N.D.N.Y. Feb. 28, 2007).

[114]   *See, e.g., Perez v. City of New York*, 41 A.D.3d 378, 379 (1st Dep't 2007); *Marrero v. City of New York*, No. 02 Civ. 6634, 2004 WL 444548, at *2 (S.D.N.Y. Mar. 10, 2004) (dismissing the City of New York as defendant from employment discrimination action brought by school custodian on the ground that it is not liable for torts allegedly committed by the DOE); *Gonzalez v. Esparza*, No. 02 Civ. 4175, 2003 WL 21834970, at *2 (S.D.N.Y. Aug. 6, 2003) (dismissing

Although amendments to the New York Education Law in 2002 provided for greater mayoral control over the DOE, the "legislative changes do not abrogate the statutory scheme for bringing lawsuits arising out of torts allegedly committed by the [DOE] and its employees, and the City [of New York] cannot be held liable for those alleged torts."[115] Because plaintiff alleges acts committed by the DOE and its employees, the City of New York is not a proper party.

### 2. Hostile Work Environment Sexual Harassment and Retaliation Under New York City Administrative Code

Plaintiff filed the instant suit in state court on or about November 12, 2007. Plaintiff's CHRL claims against the DOE – an entity listed in section 3813(1) – are dismissed as time-barred pursuant to section 3813(2-b) to the extent they accrued prior to November 12, 2006.[116] Moreover, plaintiff does not allege that he filed a notice of claim pursuant to section 3813(1) nor has he made any

---

the City of New York as defendant from sexual harassment action brought by a student under Title IX of the Education Amendments of 1972 on the ground that the DOE continued to exist as a "separate and distinct legal entity" from the City of New York following the amendments to the New York Education Law).

[115] *Perez*, 41 A.D.3d at 379 (citation omitted). Although hostile work environment sexual harassment and retaliation may not qualify as torts, the same reasoning nonetheless applies to these claims.

[116] *See Williams v. City of New York*, No. 99 CV 2697, 2006 WL 2668211, at *25 (E.D.N.Y. Sept. 11, 2006) (dismissing plaintiff's CHRL claims against the DOE as time-barred to the extent they accrued prior to May 1998 – one year before the filing of the complaint).

31

request for leave to file a late notice of claim.[117] Those failures preclude all of his

claims against the DOE.[118]

For the same reasons, plaintiff's claims against Burnett, Erber, and

Brown are dismissed because, as superintendents of District 75, they are officers

of District 75. Thus, any claims against them are subject to the one-year statute of

limitations and notice of claim requirements under section 3813.

---

[117]    Any request for an extension of time to file a notice of claim "shall
not exceed the time limited for the commencement of an action by the claimant" –
*i.e.*, one-year after the claim arises. N.Y. Educ. Law § 3813(2-a). *See Ximines*,
2006 WL 2086483, at *10 ("This statutory limitation to the Court's power to
extend the time to serve notice of claim divests the [C]ourt of authority to grant an
extension after the statute of limitations for the claim expires.").

[118]    Plaintiff attached to its submission in opposition to defendants'
motion to dismiss an undated verified complaint (the "Exhibit") against the City of
New York and the DOE, filed with the New York State Division of Human Rights.
*See* Verified Complaint Pursuant to Executive Law, Article 15, Ex. 4 to
Affirmation of Anthony C. Ofodile, plaintiff's counsel, in Opposition to
Defendants' Motion to Dismiss. "[W]hen a plaintiff chooses not to attach to the
complaint or incorporate by reference a [document] upon which it solely relies and
which is integral to the complaint, the court may nevertheless take the document
into consideration in deciding the defendant's motion to dismiss, without
converting the proceeding to one for summary judgment." *Holowecki v. Federal
Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) (quotation marks omitted).
Here, however, there is no indication that plaintiff relies upon the Exhibit as
constituting constructive notice of claim to the DOE, or that plaintiff deems it to
be integral to the Complaint. Moreover, the Exhibit makes certain materially
different allegations from the Complaint – for example, it does not allege any
retaliation but appears to allege that plaintiff's transfer to P753X was made to
protect rather than punish him. As a result, I decline to consider it as grounds for
excusing plaintiff from section 3813(1)'s notice of claim requirement.

However, plaintiff's claims against Bleadon are subject to a different analysis because Bleadon – the P12X principal – is not an officer within the meaning of section 3813.[119] That section's requirements apply to "any officer . . . [of a] school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four."[120] "Article 85 schools are statutorily designated 'special schools,' including schools for the instruction of the deaf and blind, as are schools governed by Chapter 1060 under the 1974 laws."[121] Although District 75 is a "Special Education District,"[122] it is not clear whether P12X qualifies as an Article 85 or Chapter 1060 school. Indeed, defendants have not raised this argument nor have they provided any information on this point.

---

[119] *See, e.g., Richards v. Calvert*, No. 99 Civ. 12172, 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005) (dismissing plaintiff's CHRL claims against the DOE where timely notice of claim was not filed, but holding that section 3813(1) does not apply to those claims against the school principal because he is not an "officer" within the meaning of the statute). *See also Williams*, 2006 WL 2668211, at *25 ("[T]he statute of limitations established by [section] 3813 does not similarly require the dismissal of plaintiff's claims against defendant [] as he is not a school, district, board of education [. . .] or any officer thereof.") (quotation marks omitted).

[120] N.Y. Educ. Law § 3813(1).

[121] *Richards*, 2005 WL 743251, at *13 (citing N.Y. Educ. Law § 4201, *et seq.*).

[122] Compl. ¶ 6.

33

If P12X does qualify, then Bleadon, as principal, would be deemed an "officer" of the school and claims against her would be subject to section 3813. However, on a motion to dismiss, a court must draw all inferences in favor of the non-movant. As a result, section 3813's one-year statute of limitations does not apply and plaintiff's claims against Bleadon are governed by the CHRL's three-year statute of limitations. Those claims against Bleadon that accrued after November 12, 2004 are timely but those that accrued prior to that date are time-barred. Similarly, because Bleadon is not an officer, section 3813's notice of claim requirements do not apply.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. The Clerk of the Court is directed to close this motion [document no. 14]. A conference is scheduled for August 18, 2008 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 30, 2008

34

- Appearances -

**For Plaintiff:**

Kathy A. Polias, Esq.
Ofodile & Associates, P.C.
498 Atlantic Ave.
Brooklyn, NY 11217
(718) 852-8300
Fax: (718) 852-7361

**For Defendants:**

Kami Z. Barker
Assistant Corporation Counsel
NYC Law Department, Office of the Corporation Counsel
100 Church Street
New York, NY 10007
(212) 788-1202
Fax: (212) 788-0940

07 Civ. 11214 (SAS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH FIERRO,

                             Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, RONNA
BLEADON, former Principal, P12X, Special
Education District 75, New York City Department
of Education, in her individual and official
capacities, SHARON BURNETT, former Local
Instructional Superintendent within Special
Education District 75, New York City Department
of Education, in her individual and official
capacities, DR. SUSAN ERBER, former
Superintendent, Special Education District 75,
Citywide Programs, New York City Department of
Education, in her individual and official capacities,
and BONNIE BROWN, former Deputy
Superintendent (and current Superintendent),
Special Education District 75, Citywide Programs,
New York City Department of Education, in her
individual and official capacities,

                           Defendants.

## NOTICE OF APPEAL

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*
*Of Counsel: Leonard Koerner*
*Tel: (212) 788-1010*
*Law Manager No.*

*Due and timely service is hereby admitted.*

*New York, N.Y.* ................................................. *,2008*

................................................................. *Esq.*

*Attorney for* ................................................................